THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHRISTINA PALMER, Defendant-Appellant.

Second District   No. 82—127

Opinion filed April 28, 1983.

Rafael A. Del Campo, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Christina Palmer, was found guilty after a jury trial of driving while under the influence of intoxicating liquor (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(a)), improper overtaking on the left (Ill. Rev. Stat. 1979, ch. 95½, par. 11—703(a)), and driving too fast for conditions (Ill. Rev. Stat. 1979, ch. 95½, par. 11—601(a)). Defendant appeals only her conviction for the first of the above offenses, asserting that the circuit court of Du Page County improperly admitted evidence concerning the results of the chemical analysis performed on a sample of her blood.

At approximately 4 p.m. on March 11, 1980, defendant was driving northbound on Route 83 in Elmhurst. She lost control of her car as she attempted to pass another vehicle and swerved across the median, where she collided with a southbound vehicle driven by another. Defendant was injured in the accident; the other driver suffered in-

juries from which he eventually died.

Shortly after the accident, an ambulance removed defendant to Memorial Hospital in Elmhurst, where she received treatment in the emergency room. Betty Theroux, a clerk assigned to the emergency room, testified she prepared the paperwork relating to defendant's treatment there. Theroux testified she used a form, admitted into evidence over objection both as People's exhibit 1 and 12, to record certain information obtained from defendant. At the bottom of the form was a section headed, "Authorization for Medical and or Surgical Treatment and Assignment of Insurance Benefits." There followed a statement authorizing emergency-room personnel "to administer such emergency medical and/or surgical treatment as he deems advisable, including blood transfusions, anesthesia, and x-rays." The blank for the patient's signature below this section had been filled in by Theroux with the notation, "Pts Verbal Permission." She testified that the patient normally is asked to sign, "[a]nd if they can't sign it, then we ask for their verbal permission." Theroux recalled asking defendant to sign, but was unable to recall defendant's response.

At various points during the hearing on the motion to suppress, the court noted that no testimony had been introduced concerning a blood test or defendant's withholding of consent for a test. Counsel responded by referring the court to defendant's unverified motion to suppress, which stated that defendant's verbal permission for treatment had been given while she was in semi-shock and not totally cognizant of her surroundings. The motion's averments continued that laboratory reports of urinalysis and hematology, which were administered within 2½ hours of the accident, failed to bear defendant's written or verbal consent to such tests. At the conclusion of the hearing, defendant's motion to suppress was denied.

Defendant subsequently made a motion *in limine* to exclude this evidence on essentially the same grounds, which motion also was denied.

Trial proceeded, and one of the officers who had investigated the accident testified that he did not arrest defendant when he saw her in the hospital. Theroux was recalled to testify, out of the hearing of the jury, and in essence repeated the testimony she had given at the prior hearing. On the basis of her testimony, the trial court found defendant had given verbal permission for treatment which was sufficient to permit the admission into evidence of the blood test.

The jury was recalled, and Bonnie Evans testified that she was employed as a phlebotomist at Memorial Hospital. She had received on-the-job training and had been so employed for 2½ years. Evans

had drawn a sample of blood from defendant in the emergency room. She identified a requisition slip showing that the sample was desired to test for defendant's alcohol level and testified the blood sample was given to a technician for analysis. Lynn Ellen Werner identified herself as the medical technologist who tested the sample of defendant's blood. She had done a 12-month's internship, was registered with the American Society for Clinical Pathologists and had been employed as a medical technologist for 3½ years. Her test disclosed the alcohol content of defendant's blood was 230 milligrams.

Lorraine Arne testified she was the afternoon supervisor of the laboratory for Memorial Hospital and had worked as a medical technologist for 18 years, including eight years as a laboratory supervisor at the hospital. She had been Evans' and Werner's supervisor on March 11. She was neither a pathologist nor a toxicologist and did not specialize in analytical chemistry. When asked if any of her personnel concerned with the case were licensed by the "State Department of Health," she responded, "No, sir. We just have a registry."

Considering the above evidence, the court found that since the laboratory personnel were not certified by the Department of Public Health, People's exhibit 14, the requisition for blood-alcohol level bearing the results of the test, did not qualify for admission into evidence. Defendant's objection to this exhibit was therefore sustained. The court denied ensuing motions by the State for a mistrial and by defendant for a directed verdict. It also denied defendant's motion to strike the testimony of Evans, Werner, and Arne. The court further ruled that since no objection was made to Werner's oral testimony concerning the results of the blood test, that evidence would stand.

Defendant then was found guilty, and this appeal followed.

Although defendant's brief is somewhat confusing, it appears defendant takes issue with the trial court's partial denial of her motion to suppress during trial and admission of oral testimony as to the results of her blood test. Defendant's pretrial motion to suppress was based on the claim that a blood test must be taken either incident to arrest, or with the consent of the person tested, and that neither occurred here. Defendant's objection at trial was based on the alleged failure of hospital personnel to meet the standards required by statute for those performing blood tests.

■ Because we agree with defendant that hospital personnel failed to meet the statutory requirements, we reverse and remand on that issue. This makes unnecessary any discussion of the remaining arrest or consent issues.

The controlling statute in this case is section 11—501 of the Illi-

nois Vehicle Code, which in pertinent part provides:

"(d) Chemical analysis of the person's blood or breath *to be considered valid under this Section* must be performed according to uniform standards adopted by the State Department of Public Health, in cooperation with the Superintendent of State Police, and by an individual possessing a valid permit issued by that Department for this purpose. The State Department of Public Health is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct such analysis and to issue permits which shall be subject to termination or revocation at the discretion of the State Department of Public Health." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(d).

The standards in question have not been made part of the record on appeal. The trial court had a copy of the standards before it, but they are before this court only as an appendix to the State's brief. This court may take judicial notice of such standards. (*Pearce v. Illinois Central Gulf R.R. Co.* (1980), 89 Ill. App. 3d 22, 411 N.E.2d 102.) The standards most relevant to the case are found in section 12, "Approval of Laboratories and Laboratory Technicians." See Illinois Department of Public Health, Standards and Procedures for Testing of Breath, Blood and Urine for Alcohol and/or Other Drugs sec. 12, at 23 (1982).

In the present case, it was clear that those responsible for the processing of defendant's blood met neither the statutory requirements nor the requirements of the departmental standards. Although the statutory permit requirement (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(d)) has been held to apply to the person who analyzes the blood, rather than the person who takes the sample (*People v. Casper* (1981), 97 Ill. App. 3d 787, 423 N.E.2d 510), Werner, who performed the analysis in this case, did not have such a permit. Moreover, Arne, the only laboratory supervisor whose credentials were made a matter of record, did not satisfy the requirements for supervisors contained in Rule 12.01 that she be a toxicologist, pathologist or other person qualified in analytical chemistry. See Illinois Department of Public Health, Standards and Procedures for Testing of Breath, Blood and Urine for Alcohol and/or Other Drugs sec. 12, at 23 (1982).

In reply to defendant's argument that these defects required exclusion of the test results, the State notes first that defendant made no objection to Werner's testimony concerning the results. Further, it is asserted that the test in this case did not involve State action so that the department's standards were inapplicable. The State also

submits that the results were admissible despite the enumerated defects in the absence of a showing by defendant that the test was incorrect or inherently suspect. Finally, any error in admitting the results is urged as being harmless beyond a reasonable doubt.

■ Although defendant did not object to Werner's testimony, she did move to strike that testimony after the deficiencies became apparent. Defendant also renewed her contention of error in her post-trial motion. Inasmuch as the error complained of was brought to the court's attention during trial and was renewed in the post-trial motion, we do not deem this error waived for lack of a contemporaneous objection. *Coleman v. Dent* (1967), 86 Ill. App. 2d 335, 229 N.E.2d 911.

The State's further argument, that compliance with the standards and permit requirement is not required in the absence of State action, has been rejected in the context of the statutory consent requirement. (*People v. Williams* (1981), 103 Ill. App. 3d 876, 431 N.E.2d 1280; *People v. Weissinger* (1980), 90 Ill. App. 3d 700, 413 N.E.2d 497.) In view of the statutory language that "[c]hemical analysis of the person's blood *** to be considered valid under this Section must be performed according to uniform standards adopted by the State Department of Public Health *** and by an individual possessing a valid permit by that Department for this purpose," we conclude that the same result must be reached here.

Unlike the situation in *People v. Casper* (1981), 97 Ill. App. 3d 787, 423 N.E.2d 510, on which the State relies, it is apparent from the record that the statute's permit requirement was not complied with in this case. The plain language of the statute, therefore, requires the conclusion that the analysis of defendant's blood may not be considered valid. Section 11—501(d) must be considered as a part of a substantive enactment prohibiting driving while under the influence. There is nothing in section 11—501 as a whole or in section 11—501(d) which limits the testing and permit requirements; they apply "[u]pon the trial of *any* action or proceeding under the statute" (emphasis added) (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(c)). The legislature has clearly decided that a blood alcohol test performed by an individual without a permit and not according to certain standards is unacceptable as evidence in a prosecution for driving while under the influence.

This analysis of the statute is similarly dispositive of the State's contention that there was no showing that the test was incorrect or inherently suspect, as we believe no such showing was necessary. To the extent to which this conclusion is contrary to the holding in *Peo-*

*ple v. Casper* (1981), 97 Ill. App. 3d 787, 423 N.E.2d 510, we decline to follow *People v. Casper.*

This conclusion renders unnecessary consideration of the State's further argument that Rule 12.01 of the departmental standards applies only in circumstances where the defendant has been placed under arrest and chemical analysis has been requested by the arresting officer. See Illinois Department of Public Health, Standards and Procedures for Testing of Breath, Blood and Urine for Alcohol and/or Other Drugs sec. 11, at 16 (1982).

In reaching this determination we are aware of another decision of this court which reached an opposite conclusion. (*People v. Pezzette* (1983), 112 Ill. App. 3d 124, 444 N.E.2d 1386.) The court there concluded that it seems apparent that the protective provisions of section 11—501 of the Illinois Vehicle Code were formulated to prevent an accused from being subjected to nonconsensual or inaccurate testing procedures by law enforcement authorities. (*People v. Pezzette* (1983), 112 Ill. App. 3d 124, 128, 444 N.E.2d 1386, 1389.) In *Pezzette* the defendant requested a blood analysis for her own use after declining a police request for a blood analysis. This court concluded that the legislative purpose of the Department of Public Health permit and regulations was obviated, or at least not implicated, where a blood test is administered at defendant's own request and not in response to either a police request or to a prior test taken at the direction of police. *People v. Pezzette* (1983), 112 Ill. App. 3d 124, 128, 444 N.E.2d 1386, 1389.

*Pezzette* may accurately describe the consent requirement of section 11—501(c), but it fails to recognize the additional and independent strictures of section 11—501(d). To hold that 11—501(d) need not be followed when there is no danger that an accused will be subjected to an unconsented test would make 11—501(d) surplusage, because the consent is *always* required for a blood alcohol analysis under section 11—501. Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(c); *People v. Weissinger* (1980), 90 Ill. App. 3d 700, 413 N.E.2d 497.

*Pezzette* relies on the statement in *People v. Todd* (1975), 59 Ill. 2d 534, 542, that "[t]he obligation to obtain consent appears to be the dominant intent of the legislature," and our observation in *People v. Weissinger* (1980), 90 Ill. App. 3d 700, 702, 413 N.E.2d 497, 499, that "[the] statutory intendment is to safeguard the rights *** to be free of the need to give evidence against himself," for its assertion that the protection provided by section 11—501(d) was intended only to prevent law enforcement officers from "subjecting" unwilling defendants to unconsented blood alcohol tests. But the cited language refers

*only* to the proper construction and underlying purpose of the separate consent requirement of section 11—501(c). The scope of section 11—501(d) was not even at issue in *Todd* or *Weissinger*, and nothing in these cases holds that the plain language of section 11—501(d) may be disregarded merely because the purpose behind the separate consent requirement of section 11—501(c) has been met. *Pezzette* also appears to state that even the consent requirements of section 11—501(c) are subjected to a State action limitation, which is directly at odds with our previous holding in *People v. Weissinger* (1980), 90 Ill. App. 3d 700, 413 N.E.2d 497. There is also nothing in the statute to support the holding in *Pezzette* that the protections of section 11—501(d) are limited to the "three testing situations" arbitrarily set up in *Pezzette* without explanation or citation of authority.

■ Finally, the State contends that any error in the admission of the blood test was harmless beyond a reasonable doubt in view of the evidence that the smell of alcohol was noticeable on defendant's breath after the accident and the fact that defendant told personnel in the emergency room that she was under the influence of alcohol. Although that evidence tends to establish that defendant had been drinking, and that by her own estimation she was intoxicated, a substantial part of the State's proof on this issue came through the testimony of Dr. John J. Spikes. Spikes, a toxicologist, testified in response to a hypothetical question that a person with a blood-alcohol concentration of .23 would be grossly impaired as to her coordination, judgment of distances and speed, and reaction times. Moreover, the prosecution exploited the evidence of the blood test during closing argument, and had submitted to the jury an instruction on the presumption of intoxication arising from a blood test of greater than .10. Under these circumstances, we do not believe that the error in admitting the test results may be deemed harmless beyond a reasonable doubt.

Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause for a new trial.

Reversed and remanded.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.