THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRIAN RANDLE, Defendant-Appellee.

Fifth District   No. 5—87—0650

Opinion filed May 4, 1989.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Russell F. Watters, of Brown, James & Rabbitt, P.C., of Belleville, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

This is a driving while intoxicated case.

A phlebotomist, a blood technician, took blood from the defendant, Brian Randle, upon the order of a physician.

The results of the analysis were suppressed because a physician was not present when the blood was taken and because the trial court believed the phlebotomist was not trained.

## I

We hold that a physician does not have to be present when a trained phlebotomist withdraws blood on a physician's order for the blood-alcohol test results to be admissible.

■ Illinois statutory law authorizes blood withdrawal by a person who has been approved by the Department of Public Health. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(2).) The Department of Public Health has approved "a trained phlebotomist acting under the direction of a licensed physician" to withdraw blood. 77 Ill. Adm. Code §510.110(a)(2) (1985).

We are called on to decide what is meant by "under the direction of a licensed physician."

■ Rules of statutory construction require that words be given their ordinary meaning as derived from common usage, unless a different meaning is intended by the statutory scheme. "Direction," according to common usage, means "authoritative instruction; order; command." Black's Law Dictionary 547 (4th ed. 1951).

The statutory regulatory scheme here in question reveals no intent that "under the direction" mean anything other than what is meant in common usage. "Direction," therefore, does not mean "in the presence of."

■ The physician ordered withdrawal of a sample of defendant's blood. The phlebotomist received the order. She followed the command. She withdrew blood from the defendant. She withdrew the blood only because of the authoritative instruction, the order, the command of the physician. Therefore, we find she acted under the direction of a licensed physician.

## II

The finding of the trial court that the phlebotomist had not been

148

trained is reversed, because it is against the manifest weight of the evidence.

What is sufficient to show that the phlebotomist has been trained?

■ The phlebotomist testified that she had been trained—although she did not describe the training—and testified that she had worked in hospitals as a phlebotomist for 18 years.

Simply because she did not fully describe the training should not cause us, after the fact, and by judicial fiat, to say she was untrained. The hospital employed her as a phlebotomist. Physicians ordered her to withdraw blood. They had sealed her training with their imprimatur.

Illinois has no formal licensing requirements for becoming a phlebotomist. It does not seem pragmatic, then, for a court to impose a higher standard for phlebotomists than that standard imposed by the health care industry. If hospitals, physicians and other medical people, all who bear heavy responsibility for the lives and health of those in their care, see fit to trust her to follow correct medical procedures, it makes little sense for courts to find her untrained and unqualified. If the law is to have any meaning, any virtue, any utility, it must mirror real life as closely as possible. That is the true spirit of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.

■ Lastly, we refuse the State's request to order this case assigned to a different trial judge. The record reveals no inclination on the part of the trial judge against the State. It reveals a judge doing his job according to his understanding of the law.

The circuit court is reversed and the cause remanded.

Reversed and remanded.

WELCH, P.J., and HARRISON, J., concur.