Clinton Melvin OLSON, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. C5–93–2083.

Court of Appeals of Minnesota.

March 22, 1994.

Gerald C. Magee, Theodore K. Abe, James Jay Rennicke, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., Joel A. Watne, Jeffrey S. Bilcik, Asst. Attys. Gen., St. Paul, for respondent.

Considered and decided by LANSING, P.J., and SCHUMACHER and MULALLY *, JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SCHUMACHER, Judge.

Clinton Melvin Olson appeals from the district court's order sustaining the revocation of his driving privileges, arguing that the district court erred in admitting the blood alcohol test results because the person who withdrew the blood was not a "qualified person" to administer the blood alcohol test under Minn.Stat. § 169.123, subd. 3 (1992). We affirm.

## FACTS

On November 28, 1992, Olson was arrested for driving while under the influence of alcohol (DWI). Olson consented to a blood alcohol test and was taken to the St. Cloud Hospital, where Bonnie Schill, a hospital laboratory phlebotomist, withdrew the blood sample. The test results indicated Olson had a blood alcohol level of .20.

At the implied consent hearing, Schill described a phlebotomist as a "semi-professional" designation but admitted that the State of Minnesota required no special certification to become a phlebotomist. She testified that the hospital had hired her as a "lab assistant with phlebotomy being [her] duty" and that she became "certified" as a phlebotomist after completing a two week training course conducted at the hospital. Schill estimated that she had drawn thousands of blood samples and at least 12 blood alcohol tests during the course of her employment with the hospital.

On appeal, Olson challenges the admission of his blood alcohol test results, arguing that the district court erred in finding adequate foundation and reliability for the test results and in concluding that Schill was qualified under the implied consent statute to withdraw blood.

## ISSUE

Did the district court err in admitting Olson's blood alcohol test results and in concluding that a phlebotomist is a qualified person to draw blood for a blood alcohol test pursuant to Minn.Stat. § 169.123, subd. 3?

## ANALYSIS

A district court has broad discretion to admit or to exclude evidence. This decision will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990).

A district court's findings of fact "shall not be set aside unless clearly erroneous." Minn.R.Civ.P. 52.01. Clearly erroneous means "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prods., Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

The implied consent law provides:

Only a physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist or *laboratory assistant* acting at the request of a peace officer may withdraw blood for the purpose of determining the presence of alcohol.

Minn.Stat. § 169.123, subd. 3 (emphasis added).

1. *Admission of Blood Alcohol Test Results*

■ As the proponent of the blood alcohol test, the state has the initial burden to
> establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability.

*State v. Dille,* 258 N.W.2d 565, 567 (Minn. 1977). Once the state meets its burden, it is "incumbent upon defendant to suggest a reason why the blood test was untrustworthy." *Id.* at 568.

The arresting officer, Dan Magaard, testified that he supplied the hospital where Olson's blood was drawn with the standard Bureau of Criminal Apprehension (BCA) blood kit, which he retrieved from trunk of his squad car, and described its condition as "near perfect; everything was intact." Magaard was present when Schill withdrew Olson's blood; Magaard signed the medical certificate and personally mailed the blood sample to the BCA lab.

Likewise, Schill stated that she followed hospital procedure in withdrawing Olson's

blood and used the BCA testing kit provided by the police officer. She described the contents of the kit and the method by which she withdrew Olson's blood. Although she did not remember Olson personally or recollect from which arm she withdrew the blood, Schill explained that she inspected the BCA kit, sanitized Olson's arm with a nonalcoholic swab, and withdrew the blood from his antecubital vein. She too signed the medical personnel certificate.

The record indicates that the state laid proper foundation to admit Schill's testimony and that undisputed evidence showed that Schill was competent to withdraw blood for the blood alcohol test. Olson did not submit evidence to impugn the accuracy of the test or to demonstrate that the testing procedures were improper and thus failed to meet his burden. The district court reasonably could have concluded that the "test itself was reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *Dille*, 258 N.W.2d at 567.

### 2. *Legal Conclusion That Phlebotomist is Qualified Under Statute*

■ A reviewing court is not bound by and need not give deference to a district court's determination of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Because Schill testified, without objection, that she was hired as a "lab assistant with phlebotomy being [her] duty," we conclude that Schill was qualified under the statute. *See* Minn.Stat. § 169.123, subd. 3 (listing laboratory assistant as qualified to withdraw blood for blood alcohol test).

Minnesota law provides that blood sample reports shall be admissible in evidence if the "person who drew the blood was competent to administer the test under section 169.123, subdivision 3." Minn.Stat. § 634.15, subd. 1(b)(ii) (1992). Moreover, relevant case law indicates that a phlebotomist with Schill's experience should be deemed qualified under the statute. Minnesota case law has consistently recognized the remedial nature of DWI statutes. *State v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). Accordingly,

these laws "are liberally interpreted in favor of the public interest and against the private interests of the drivers involved." *Id.*

A liberal construction of the statute does not exclude a phlebotomist with seven and one-half years of experience, whose only duty was to draw blood, and who works in a hospital setting under the supervision of a medical technologist. Rather, these facts comply with the legislative intent to ensure the competency of the person withdrawing the blood and to protect the defendant's health.

While no Minnesota case law has specifically addressed this issue, other jurisdictions have considered similar fact situations and concluded that a phlebotomist is competent to withdraw blood for blood alcohol tests. *See, e.g., Thurman v. State*, 172 Ga.App. 16, 321 S.E.2d 780, 781–82 (1984) (finding phlebotomist qualified under implied consent statute); *Gooch v. State*, 155 Ga.App. 708, 272 S.E.2d 572, 575 (1980) (holding that hospital-trained phlebotomist whose only job was to draw blood was qualified under implied consent statute); *People v. Randle*, 183 Ill.App.3d 146, 131 Ill.Dec. 697, 698, 538 N.E.2d 1253, 1254 (Ill.App.Ct.) (finding that physicians who employed phlebotomist had "sealed her training with their imprimatur"), *appeal denied*, 127 Ill.2d 634, 136 Ill.Dec. 601, 545 N.E.2d 125 (1989); *Speers v. Commonwealth*, 828 S.W.2d 638, 640 (Ky.1992) (construing statutory term "medical technician" as including a phlebotomist, even though not specifically delineated by statute).

Those states refusing to recognize phlebotomists as qualified have done so on factually or procedurally distinct bases. *See, e.g., Caffey v. State*, 43 Ark.App. 160, 862 S.W.2d 293, 295 (1993) (finding that blood test results were inadmissible where state presented no evidence that phlebotomist had substantially complied with regulations); *State v. Barnick*, 477 N.W.2d 200, 202 (N.D.1991) (deeming "self-styled" phlebotomist, who had neither medical credentials nor medical supervision, unqualified to withdraw blood under implied consent statute). Olson relies on *People v. Palmer*, 114 Ill.App.3d 454, 70 Ill.Dec. 127, 448 N.E.2d 1005 (1983). A careful reading of *Palmer*, however, reveals that the Illinois

court refused to admit the defendant's blood alcohol test results—not because the phlebotomist was unqualified—but because none of the laboratory personnel held a valid statutory permit to analyze a blood alcohol sample. *Id.* 70 Ill.Dec. at 130–131, 448 N.E.2d at 1008–09.

Restricting the

"procurement of blood samples to certain qualified persons serves to protect not only the health of the person from whom the blood sample is taken but also the reliability of the blood sample itself."

*Barnick,* 477 N.W.2d at 201 (quoting *State v. Hanson,* 345 N.W.2d 845, 849 (N.D.1984)). Here, the state established the reliability of the evidence. Likewise, the arresting officer brought Olson to a hospital, a setting designed to protect his health. Because Minnesota law does not require phlebotomists to be certified or licensed, it would not seem

pragmatic, then, for a court to impose a higher standard for phlebotomists than that standard imposed by the health care industry. If hospitals, physicians and other medical people, all who bear heavy responsibility for the lives and health of those in their care, see fit to trust [a phlebotomist] to follow correct medical procedures, it makes little sense for courts to find her untrained and unqualified.

*Randle,* 131 Ill.Dec. at 699, 538 N.E.2d at 1255.

## DECISION

The district court did not err in admitting the evidence of Olson's blood alcohol level or in concluding that Schill was competent to withdraw blood for a blood alcohol test.

Affirmed.