STATE of Minnesota, Respondent,

v.

Clinton Melvin OLSON, Appellant.

No. C8–93–1879.

Court of Appeals of Minnesota.

May 3, 1994.

Gerald C. Magee, Theodore K. Abe, James Jay Rennicke, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Roger S. Van Heel, Stearns County Atty., Samuel Wertheimer, II, Asst. County Atty., St. Cloud, for respondent.

Considered and decided by ANDERSON, C.J., and PARKER and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

In July 1993, a jury found Clinton Melvin Olson guilty of three counts of driving under the influence of alcohol in violation of Minn. Stat. § 169.121, subd. 1(a), (d), (e) (1992) and one count of open bottle in violation of Minn. Stat. § 169.122, subd. 3 (1992). Olson moved for a new trial and vacation of the trial court's judgment, alleging that the court erred in admitting his blood alcohol test results because the laboratory phlebotomist who withdrew the blood sample was not qualified under Minn.Stat. § 169.123, subd. 3 (1992).

In Olson's recent civil appeal of the revocation of his driving privileges, this court determined that a laboratory phlebotomist, working in a medical setting, under medical supervision, was competent to withdraw blood notwithstanding the absence of the title "phlebotomist" from the list of "qualified" persons enumerated by the implied consent statute. *See Olson v. Commissioner of Pub. Safety,* 513 N.W.2d 491 (Minn.App.1994); Minn.Stat. § 169.123, subd. 3 (listing physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist or laboratory as-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

sistant as qualified to withdraw blood for blood alcohol test). We are now asked to address the application of the "qualified" person language of section 169.123, subdivision 3 to Olson's criminal DWI conviction. We affirm.

## FACTS

Clinton Melvin Olson was arrested for driving under the influence and consented to a blood alcohol test under Minn.Stat. § 169.-123, subd. 2(1) (1992). The arresting officer transported Olson to the St. Cloud Hospital, where Bonnie Schill, the hospital's laboratory phlebotomist, withdrew a blood sample.

Schill used the standard Bureau of Criminal Apprehension (BCA) blood testing kit, supplied by the police officer. Schill testified that she inspected the kit and followed standard practice and procedure in withdrawing Olson's blood sample. Schill noted nothing unusual about the BCA kit, nor did she remember anything unique about Olson's blood draw.

The state also called Lisa Hanson, a forensic scientist with the BCA, who analyzed Olson's blood sample. Hanson testified at length about the procedure used in analyzing blood for ethyl alcohol and noted that there were no signs of anything unusual with Olson's sample itself. She stated that the blood alcohol content result of .20 was accurate and reliable.

Olson now argues that the trial court erred in admitting his test results because Schill was not qualified to withdraw his blood sample under Minn.Stat. § 169.123, subd. 3.

## ISSUE

Did the trial court err by admitting a blood alcohol test result in a DWI prosecution, where the person who withdrew the blood sample was not specifically listed under Minn.Stat. § 169.123, subd. 3?

## ANALYSIS

■ Under Minnesota's criminal DWI statute,

the court may admit evidence of the amount of alcohol * * * in the person's blood, breath, or urine as shown by an analysis of those items.

Minn.Stat. § 169.121, subd. 2 (1992). The trial court has broad discretion in its rulings on evidentiary matters. *See State v. Brown,* 455 N.W.2d 65, 69 (Minn.App.1990), *pet. for rev. denied* (Minn. July 6, 1990). Whether scientific evidence is admissible depends in part on whether the state establishes that the test itself is reliable and that its administration in that case conformed to the procedure necessary to ensure reliability. *State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977). Once the state has established the reliability of the test itself, the defendant has the burden to suggest a reason why the blood test was untrustworthy. *Id.* at 568.

■ While compliance with the procedures of the implied consent law is a prerequisite to a driver's license revocation under the implied consent statute, not all procedures of the implied consent statutes apply to DWI prosecutions. *State v. Pittman,* 395 N.W.2d 736, 738 (Minn.App.1986) (holding that while failure to offer defendant a choice between blood or urine test precluded admission of test results in defendant's civil implied consent proceeding, test was admissible in his criminal DWI proceeding).

Here, appellant claims that the district court erred in admitting the results of his blood test in his DWI proceeding, because the person who withdrew the blood sample was not competent to administer the test under Minn.Stat. § 169.123, subd. 3. We disagree.

■ We first note that Minn.Stat. § 169.-123, subd. 3 has been applied in the criminal DWI context by Minn.Stat. § 634.15, subd. 1(b) (1992) (determining admissibility of blood alcohol reports in DWI proceedings and pretrial implied consent proceedings). Second, we note that here, as in his related appeal, Olson has failed to introduce any evidence whatsoever to impugn the accuracy or reliability of the test result. In light of the substantial evidence in the record indicating that no deviation from any standard procedure took place, we cannot conclude that his blood alcohol content results of .20 were inaccurate or unreliable.

Finally, we conclude that because this court has already determined that the laboratory phlebotomist who withdrew Olson's blood in this case was a "qualified" person under Minn.Stat. § 169.123, subd. 3, the district court did not err by finding that Schill was a "qualified" person under Minn.Stat. § 169.123, subd. 3. The court did not err by admitting Olson's blood alcohol test results.

### DECISION

The district court did not abuse its discretion by finding that the phlebotomist was "certainly qualified * * * within the [statutory list of qualified persons] * * * as both a technician and a laboratory assistant" or by admitting Olson's blood alcohol test results into evidence.

**Affirmed.**