STATE v. ROBERT A. ANDREWS.*

212 N. W. 2d 863.

September 14, 1973—No. 43787.

---

* Record certified to United States Supreme Court March 5, 1974.

*John S. Connolly*, for appellant.

*Warren Spannaus*, Attorney General, *William B. Randall*, County Attorney, *Kenneth J. Fitzpatrick*, City Attorney, and *A. Keith Hanzel* and *Daniel L. Ficker*, Assistant City Attorneys, for respondent.

KELLY, JUSTICE.

Defendant, convicted by a St. Paul municipal court jury of driving while under the influence of an alcoholic beverage, Minn. St. 169.121, appeals from judgment of conviction and from the order denying his motion for a new trial. We reverse and grant defendant a new trial on the ground that the trial court committed prejudicial error in admitting evidence that defendant had refused to submit to chemical testing.

In State v. McCarthy, 259 Minn. 24, 104 N. W. 2d 673, 87 A. L. R. 2d 360 (1960), which was also a prosecution under § 169.121, we held that the admission of evidence that permitted the jury to infer that defendant had refused to submit to chemical testing constituted prejudicial error. We based that decision in part upon the privilege against compelled self-incrimination and in part upon § 169.121, which makes chemical testing voluntary on the defendant's part.

Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. 2d 908 (1966), relied upon by the state, has not caused us to change our opinion that admission of such evidence violates a defendant's right not to be compelled in any criminal case to be a witness against himself. U. S. Const. Amend. V; Minn. Const. art. 1, § 7. Schmerber held that the admission of the results of tests conducted on blood samples taken from an accused

without his permission did not violate the accused's right not to be compelled in any criminal case to be a witness against himself. But it does not follow, as the state contends, that since an arrested motorist has no constitutional (as opposed to statutory) right to refuse to submit to chemical testing, he has no constitutional right to have evidence of that refusal excluded from evidence. Indeed, in Schmerber the court emphasized in a footnote that it was not deciding whether admission of evidence of an accused's refusal to submit to chemical testing would violate any of the accused's constitutional rights. 384 U. S. 765, note 9, 86 S. Ct. 1833, 16 L. ed. 2d 916. The argument for holding that admission of evidence of refusal in this context does violate a defendant's constitutional rights is well stated in Note, 78 Yale L. J. 1074, 1084:

"* * * Evidence of a suspect's refusal * * * is relevant to the crime charged only in its testimonial aspect, as the approximate equivalent of the statement, 'Because I fear that the examination will produce evidence of my guilt, I refuse to permit it.' Therefore, the privilege against self-incrimination seems relevant. There remains the question of whether such testimonial evidence is 'compelled' for purposes of applying the fifth amendment standard. In one sense the testimonial action is obviously not compelled—the state is not ordering the suspect to *refuse* cooperation. But the state does compel a suspect to choose between submitting to a perhaps unpleasant examination and producing testimonial evidence against himself. The suspect's option to submit to a lawfully imposed burden instead of implicitly testifying against himself does not necessarily save the procedure: lifting a lawful burden—the examination—is in effect an inducement that casts doubt on the 'voluntariness' of the testimonial evidence thereby obtained."

In short, we are not convinced that we erred when we held in McCarthy that admission of such evidence in a prosecution under

§ 169.121 violated an accused's right not to be compelled in a criminal case to be a witness against himself.[1]

This court has not specifically adopted any rule regarding the admissibility of this evidence under its inherent rule-making power and, as we have done in many instances, might be inclined to follow the expressed intent of the legislature as a matter of comity. Thus, a discussion of the intent of the legislature would seem to be in order.

We are not convinced, as the state is, that since our decision in McCarthy the legislature has clearly expressed its intent that such evidence be admissible. At the time of our decision, § 169.121 contained no provision specifying whether such evidence was admissible. Then in 1961, following the McCarthy decision,

---

[1] It is difficult to discern any real difference between permitting an arresting police officer in an aggravated robbery case to testify that he advised an accused of his right to remain silent and that anything he said might be used against him and allowing an arresting officer in a "driving under the influence" case to testify that he offered a chemical test. One inference that might be drawn from that testimony in the first case is that the accused, if innocent, would have denied his guilt and made explanation. There being no testimony that he did so would give rise to an inference of guilt. Similarly, in the instant case, testimony that the defendant was offered chemical testing to determine the alcoholic content of his blood and that he refused it gives rise to an inference that he thought the test would prove his guilt. Thus, when a defendant says "No, I will not take any test," he is testifying against himself. Surely this is testimonial evidence. In State v. Beck, 289 Minn. 287, 183 N. W. 2d 781 (1971), we held it was error to receive into evidence, over objection thereto, testimony of an arresting officer that he gave Beck a "Miranda warning." One of the basic reasons for the Beck decision was that it is impermissible to penalize an individual for exercising his Fifth Amendment rights when he is under police custodial interrogation, so the fact that he stood mute or claimed his privilege may not be used against him at trial. Similarly, in a "driving under the influence case" we should not permit testimony that the accused was offered a chemical test and stood mute or claimed his privilege to refuse the test. Compare State v. Roberts, 296 Minn. 347, 208 N. W. 2d 744 (1973).

the legislature amended § 169.121, subd. 2, adding the following provision—"but the refusal to permit the taking of specimens for such chemical analysis shall not be admissible in evidence." L. 1961, c. 454, § 9. By L. 1971, c. 893, § 2, the legislature deleted this provision from § 169.121, subd. 2. The legislature's intent in deleting this provision is difficult to ascertain. On the one hand, arguably the legislature intended to remove any statutory barrier to the admission of such evidence. On the other hand, the statute as it now reads is no different with respect to admission of such evidence than it was when interpreted in McCarthy, and a defendant still has the right to refuse to take any tests.

In short, we are unconvinced by the state's arguments that the statute permits admission of such evidence in prosecutions for driving under the influence and that the admission of such evidence does not violate a defendant's constitutional rights.

The only question that remains with respect to this issue is whether the error was prejudicial. In McCarthy, we held that there was little doubt that admission of the evidence of refusal in all probability strongly influenced the jury in reaching its decision notwithstanding the court's instructions to disregard that evidence. The evidence against defendant in this case was no stronger than the evidence against McCarthy; accordingly, we hold that the error was prejudicial.

Additionally, defendant contends that the trial court erred in denying his motion for a mistrial made after one of the arresting officers testified, in response to a prosecution question, that defendant, while in custody and after receiving a Miranda warning, had stated that "he had been read his rights many times before." This evidence arguably apprised the jury of defendant's prior arrest record and therefore, at least under the circumstances of this case, should not have been admitted. However, in view of our decision with respect to the admission of evidence of refusal, we need not decide whether admission of this evidence

would alone necessitate a new trial. On retrial, the prosecution should exercise caution so that this error is not repeated.

Reversed and new trial granted.

KNUTSON, CHIEF JUSTICE (concurring specially).

I concur specially in the majority opinion.

I think it was a mistake to base decision in State v. McCarthy, 259 Minn. 24, 104 N. W. 2d 673, in part on constitutional grounds. Similarly, I think it is a mistake to base this decision on constitutional grounds.

When the legislature amended Minn. St. 169.121 in 1961 it made evidence involved in this case inadmissible as a matter of statutory law. If the rule is based on constitutional grounds, the legislature could not change the rule. When the statute was again amended by L. 1971, c. 893, § 2, it was simply returned to the form it had when McCarthy was decided. Absent a constitutional proscription, there is no reason why the legislature, if it saw fit, could not make this evidence admissible. That is the way I would leave it.

The courts are in complete disharmony on this subject. See, Annotation, 87 A. L. R. 2d 370.

PETERSON, JUSTICE (dissenting).

The majority holds that in a prosecution for driving a vehicle while under the influence of an alcoholic beverage, Minn. St. 169.121, it is, on both statutory and constitutional grounds, prejudicial error to permit the prosecution to establish that defendant had refused to submit to a "chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood" as provided by § 169.123, subd. 2. I do not agree.[1]

---

[1] I do not quibble with the presentation of the issue, although what the trial court ruled was that the state could introduce evidence that the police had offered defendant tests and that none were taken. Because of my view on that more basic issue, I do not consider any secondary issue as to whether the held error was prejudicial, other than this marginal note as to the uncontroverted evidence of guilt. Three

My first point of disagreement is with the interpretation of the present § 169.121 as expressing a legislative intent to make such evidence of refusal inadmissible. Our decision in State v. McCarthy, 259 Minn. 24, 104 N. W. 2d 673, 87 A. L. R. 2d 360 (1960), upon which the majority opinion relies, so interpeted the statute as it existed at that time. This interpretation was permissible since the statute, unlike similar statutes in several other states, did not make testing mandatory and contained no specific provision authorizing evidence of refusal to submit to testing. Subsequent legislative history, however, presents the issue of statutory interpretation in a wholly different context. In the 1961 legislative session, which followed the McCarthy decision, the legislature amended § 169.121, subd. 2, by adding this language: "[B]ut the refusal to permit the taking of specimens for such chemical analysis shall not be admissible in evidence. * * *" L. 1961, c. 454, § 9. Thereafter, Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. 2d 908 (1966), cleared constitutional doubt as to the validity of mandatory chemical testing, and in the 1971 legislative session the legislature deleted the 1961 language that proscribed admission of evidence of refusal to be tested. L. 1971, c. 893, § 2.

It seems inescapable to me that by the 1971 amendment the legislature intended to authorize the admission of such evidence. Although the legislature could have even more clearly manifested its intent by inserting express language authorizing the admis-

police officers testified for the prosecution; no one testified for the defense. The testimony of the police officers was that at the time of his arrest defendant had smelled of alcohol, appeared to be somewhat glassy-eyed, had difficulty standing, had swayed as he walked, and had driven his automobile in an extremely erratic manner. The testimony of the police officers concerning defendant's postarrest conduct was that he "babbled" and that, after receiving a Miranda warning, he admitted that he had been drinking; that he smelled of alcohol and swayed as he walked; and that he had urinated in his pants. These officers understandably were of the opinion that defendant was under the influence of alcohol.

sion of evidence of refusal to submit to chemical testing, the less tenable alternative is to assume that the legislature simply intended to restore the McCarthy interpretation by deleting the very language that McCarthy had inspired. The concept of the implied-consent law had by 1971 been more widely accepted than at the time of its first enactment, with increased public awareness of its routine use. This being so, the legislature could well have intended to avoid a jury's speculating that a chemical test had been given to the defendant but that the absence of any evidence concerning the result indicated that the results were negative.

My second point of disagreement with the majority opinion is on the constitutional issue. This is more fundamental for it effectively precludes statutory authorization regardless of how explicit it might be. State v. McCarthy, *supra,* upon which the majority relies, seemingly held—although in an extraordinarily oblique way—that the admission of such evidence contravened a defendant's constitutional right against testimonial self-incrimination. Without any analysis of its constitutional significance, the court simply cited art. 1, § 7, of the Minnesota Constitution, which provides in part that "[n]o person shall be * * * compelled in any criminal case to be a witness against himself," [2] and Minn. St. 611.11, which provides that a defendant's "failure to testify shall not create any presumption against him, nor shall it be alluded to by the prosecuting attorney or by the court." These undiscussed citations were followed by a discussion of judicial precedents in which the result of allowing or disallowing the admissibility of such evidence was based on statutory, not constitutional, grounds. Distinguishing the contrary precedents

---

[2] The court did not refer to the Fifth Amendment to the United States Constitution, but nothing in the opinion is indicative of an intent to interpret or apply the like provisions of both constitutions differently. As with the constitutional guarantees of equal protection, for example, we ordinarily consider such fundamental provisions in both constitutions to be the same. Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 354, 147 N. W. 2d 358, 363 (1966).

of other states, this court noted that the statutes in those states made testing mandatory, whereas our legislature "intended that the choice should be absolutely free and not encumbered by a liability." 259 Minn. 30, 104 N. W. 2d 677, 87 A. L. R. 2d 367. This court concluded, without other explication: "Based upon our constitutional and statutory restrictions as above set forth and conscious that the tests specified by § 169.121 must be voluntary, we conclude that the admission of the evidence described constituted reversible error." 259 Minn. 31, 104 N. W. 2d 678, 87 A. L. R. 2d 367.

McCarthy, if indeed it was decided on constitutional grounds, stands alone. It does not square, first, with the decisions of the United States Supreme Court. Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. 2d 908 (1966), considered, in a prosecution for driving an automobile while under the influence of an intoxicating liquor, the admissibility of the results of a chemical analysis of a blood sample extracted from the accused, by a physician under police direction, despite the accused's refusal to consent to the procedure. Squarely holding that the use of this evidence did not violate the Fifth Amendment privilege of a person not to be "compelled in any criminal case to be a witness against himself," the court reasoned that it did not involve state compulsion for defendant "to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." 384 U. S. 761, 86 S. Ct. 1830, 16 L. ed. 2d 914.

A marginal comment to the Schmerber opinion (384 U. S. 765, note 9, 86 S. Ct. 1833, 16 L. ed. 2d 916),[3] to which the ma-

---

[3] "This conclusion would not necessarily govern had the State tried to show that the accused had incriminated himself when told that he would have to be tested. Such incriminating evidence may be an unavoidable by-product of the compulsion to take the test, especially for an individual who fears the extraction or opposes it on religious grounds. If it wishes to compel persons to submit to such attempts to discover evidence, the State may have to forgo the advantage of any testimonial products of administering the test—products which would

jority opinion here adverts, expressed a reservation as to the admissibility of *testimonial* self-incrimination as a result of compulsion to be tested, such as in the case of individuals who would confess rather than to suffer the emotional or physical pain of some kinds of extractive procedures. This expressed reservation is irrelevant in the instant case, for there is not the slightest intimation that the admission which defendant made was the result of any concern about the pain or hazard or religious infringement involved in the proffered chemical test. There could be no such concern, moreover, with respect to submitting a mere sample of breath or urine, and even as to the extraction of blood, as the court recalled in another footnote (384 U. S. 771, note 13, 86 S. Ct. 1836, 16 L. ed. 2d 920),[4] such concern, except for religious scruples, would be highly doubtful.

California is the leading post-Schmerber state authority that evidence of a refusal to take a chemical test is not constitutionally impermissible. In People v. Ellis, 65 Cal. 2d 529, 55 Cal. Rptr. 385, 421 P. 2d 393 (1966), the California Supreme Court, in an opinion by Mr. Chief Justice Roger Traynor, held that the defendant's refusal to speak words so that a victim of a crime might be aided in making her identification of her assailant, was not testimonial communication but was circumstantial evidence of consciousness of guilt. Although the conviction was reversed

---

fall within the privilege. Indeed, there may be circumstances in which the pain, danger, or severity of an operation would almost inevitably cause a person to prefer confession to undergoing the 'search,' and nothing we say today should be taken as establishing the permissibility of compulsion in that case. But no such situation is presented in this case."

[4] " 'The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors.' Breithaupt v. Abram [352 U. S. 432, 436, 77 S. Ct. 408, 410, 1 L. ed. 448, 451]."

because the police had not informed defendant that evidence of his refusal would be admissible, the chief justice wrote:

"* * * A guilty party may prefer not to find himself in a situation where consciousness of guilt may be inferred from his conduct, but it can scarcely be contended that the police, who seek evidence from the test itself, will tend to coerce parties into refusing to take tests in order to produce this evidence.

"Although conduct indicating consciousness of guilt is often described as an 'admission by conduct,' such nomenclature should not obscure the fact that guilty conduct is not a testimonial statement of guilt. It is therefore not protected by the Fifth Amendment. By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind.

"We are aware that the United States Supreme Court in Schmerber v. State of California * * * has cautioned that in some cases the administration of tests might result in 'testimonial products' proscribed by the privilege. We do not believe, however, that the inferences flowing from guilty conduct are such testimonial products. Rather, the court's concern seemed directed to insuring full protection of the testimonial privilege from even unintended coercive pressures. In the case of a blood test, for example, the court considered the possibility that fear induced by the prospect of having the test administered might itself provide a coercive device to elicit incriminating statements. Such a compelled testimonial product would of course be inadmissible." 65 Cal. 2d 537, 55 Cal. Rptr. 389, 421 P. 2d 397.

Having so stated the predicate in Ellis, the California Supreme Court in People v. Sudduth, 65 Cal. 2d 543, 55 Cal. Rptr. 393, 421 P. 2d 401 (1966), decided the same term, squarely held that the prosecution's evidence and comment upon refusal of defendant to submit to a breathalyzer test was constitutionally admissible.[5]

---

[5] The California statutory scheme provided for mandatory chemical testing as opposed to the voluntary scheme in Minn. St. 169.121, the

Other cases which have followed the California doctrine are City of Waukesha v. Godfrey, 41 Wis. 2d 401, 164 N. W. 2d 314 (1969); State v. Holt, 261 Iowa 1089, 156 N. W. 2d 884 (1968); State v. Heisdorffer, 164 N. W. 2d 173 (Iowa 1969); State v. Cary, 49 N. J. 343, 230 A. 2d 384 (1967); City of Westerville v. Cunningham, 15 Ohio St. 2d 121, 239 N. E. 2d 40 (1968). Pre-Schmerber cases, some of which are cited in State v. McCarthy, *supra,* are collected at 87 A. L. R. 2d 370, 378.

It is my opinion that neither the statute nor the Constitutions of Minnesota and the United States make inadmissible the evidence that the offered chemical testing of the alcoholic content of defendant's blood was refused.[6] To the extent that State v. McCarthy, *supra,* may be considered to have controlled the contrary opinion of the court, I would overrule it and affirm the conviction.

OTIS, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Peterson.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the submission, took no part in the consideration or decision of this case.

---

kind of distinction observed in State v. McCarthy, 259 Minn. 24, 104 N. W. 2d 673, 87 A. L. R. 2d 360 (1960). Of course, this distinction relates only to the issue of statutory interpretation, for the constitutional issue is exactly the same in either case.

[6] This opinion is not inconsistent with our decision in State v. Beck, 289 Minn. 287, 183 N. W. 2d 781 (1971), to which the majority adverts in footnote 1. There, the prosecutor, without more, pointlessly adduced testimony of the arresting police officer that the accused had been given a Miranda warning. The obvious implication was that the accused had declined to give *testimonial* evidence, as he has a clear Fifth Amendment right to do. Here, however, the pointed testimony of the police officer was that the accused had declined to give *nontestimonial* physical evidence, which does not have that constitutionally protected status.