Sandra Lynne CONNOR,
petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C1–85–1841.

Court of Appeals of Minnesota.

April 22, 1986.

Michael A. Zimmer, Waseca, for respondent.

Hubert H. Humphrey, III, Atty. Gen., M. Jacqueline Regis, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by PARKER, P.J., LANSING and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Respondent Sandra Lynne Connor failed a breath test, and her driving privileges were revoked pursuant to the implied consent law. After a hearing, the trial court rescinded the revocation. The Commissioner of Public Safety appeals, and we reverse.

## FACTS

On June 15, 1985, Connor drove her car into a ditch while attempting to make a turn. A passerby then tried to drive the car out, but only succeeded in driving it 30 yards further into the ditch. Deputy Sheriff James Wobschall arrived at the scene and saw Connor's car in the ditch. The trial court specifically found that Wobschall did not know the time the accident occurred. The car was not in the ditch when he had driven past the site approximately four hours earlier. The trial court

also specifically found there was no evidence of the time Connor's car entered the ditch. However, Wobschall testified that Connor indicated that she had gone into the ditch a short time before he arrived.

Wobschall talked to Connor twice, and she identified herself as the driver. He detected no signs of intoxication when he initially talked to her, but when he talked to her again a few minutes later, he smelled a moderate odor of alcohol and observed that her eyes were watery and her skin flushed.

Wobschall gave Connor a preliminary breath test, but she was unable to provide an adequate sample. He then arrested her for driving while under the influence of alcohol. Connor was taken to the Waseca County Law Enforcement Center, where she was given field tests and read the implied consent advisory. These proceedings were videotaped and shown at the implied consent hearing. The trial court found that in the field tests Connor walked a straight line, touched the tip of her nose as instructed, said the alphabet, counted backward from 100 to 80, and wrote her name on a blackboard. The trial court found that she appeared nervous.

The implied consent advisory was read to Connor, and Wobschall explained it in his own words. He told Connor that refusal to take the test implied guilt. Connor took a breath test, which indicated an alcohol concentration of .12.

Based on these facts, the trial court determined that the officer had probable cause to believe Connor was under the influence of alcohol at the time of arrest. It concluded, however, that Wobschall did not have probable cause to believe Connor was under the influence of alcohol at the time her car entered the ditch because he did not know when this occurred. It also determined that Connor was misled as to the meaning of that portion of the implied

consent advisory which provides that "if you refuse to take the test your refusal will be offered into evidence against you at trial," when she was told that refusal to take the test implied guilt. The trial court rescinded the revocation of Connor's driving privileges, and the Commissioner of Public Safety appeals.

## ISSUES

1. Did the trial court err in determining that the officer lacked probable cause to believe respondent had been driving a motor vehicle while under the influence of alcohol?

2. Did the trial court err in concluding that respondent was misled by the officer's statement that refusal to take the test implied guilt?

## ANALYSIS

### I

The trial court based its decision that no probable cause existed on *Dietrich v. Commissioner of Public Safety*, 363 N.W.2d 801 (Minn.Ct.App.1985). In *Dietrich* this court upheld the rescission of a driver's license revocation because the evidence was insufficient to establish the necessary connection between the driver's drinking and driving. *Id.* at 803. *Dietrich* did not, however, require that the officer explicitly testify as to the time the accident occurred. *Graham v. Commissioner of Public Safety*, 374 N.W.2d 809, 811 (Minn.Ct.App. 1985).

The trial court here found that the officer did not know what time the accident occurred and that there was no evidence of the time Connor's car entered the ditch and based its decision that no probable cause existed on these findings. The trial court misperceived the nature of an implied consent proceeding.[1]

1. The transcript reveals that, when the prosecuting attorney asked the arresting officer what was said to him by two witnesses whom he interviewed at the scene, defense counsel's hearsay objection was sustained. The Commission-

er's offer was directed to the standard quoted above; the testimony was not offered for a hearsay purpose. *See Schlemme v. Commissioner of Public Safety*, 363 N.W.2d 781 (Minn. Ct.App.1985).

Probable cause exists where all the facts and circumstances would warrant a cautious person to believe that the suspect was driving or operating a vehicle while under the influence.

*Johnson v. Commissioner of Public Safety,* 366 N.W.2d 347, 350 (Minn.Ct.App. 1985). The officer's judgment and experience must be given great deference. *Id.* Rather than focusing on proof of the time when the vehicle was driven in the ditch, the inquiry must be whether there was evidence that Connor was under the influence at the time she drove the car. *Foster v. Commissioner of Public Safety,* 381 N.W.2d 512, 514 (Minn.Ct.App.1986).

■ Wobschall testified that he asked Connor if she had been drinking. On direct examination, he testified that Connor said she had been drinking at the Janesville Haydaze celebration. On cross-examination, he clarified that she said she had a couple of beers at Haydaze. Connor also told Wobschall that she had been driving and that she drove into a ditch while attempting a turn. He testified that he believed she indicated that she had gone into the ditch a short time before he arrived. Wobschall noted indicia of intoxication. These facts are sufficient to provide probable cause to believe Connor had been driving while under the influence. *See State v. Harris,* 265 Minn. 260, 121 N.W.2d 327 (1963).

## II

A further issue which may be raised at an implied consent hearing is

whether at the time of the request for the test the peace officer informed the person of his rights and the consequences of taking or refusing the test as required by subdivision 2.

Minn.Stat. § 169.123, subd. 6(2) (1984). Subdivision 2(b)(5) provides:

At the time a test is requested, the person shall be informed * * * that if he refuses to take a test, the refusal will be offered into evidence against him at trial.

Minn.Stat. § 169.123, subd. 2(b)(5) (1984). The trial court found that the officer, in addition to reading the implied consent advisory, informed Connor that refusal to take the test implied guilt. It concluded that Connor was misled by the officer. This formed a second basis for the trial court's decision to rescind the revocation of Connor's driving privileges.

A preliminary issue has been raised concerning the record on this evidence. The proceedings at the sheriff's office were videotaped. During cross-examination of the officer, Connor's counsel, pursuant to a stipulation with the Commissioner's counsel, showed about 16 minutes of the videotape. The videotape was not formally offered into evidence by either party. At oral argument the parties stipulated that the court could view the videotape, and the court has done so.

■ The issue of whether an officer confused or misled the driver generally arises when the driver argues that a refusal was reasonable because he or she was misled by the officer. *State, Department of Highways v. Beckey,* 291 Minn. 483, 485, 192 N.W.2d 441, 443 (1971); *Hallock v. Commissioner of Public Safety,* 372 N.W.2d 82, 83 (Minn.Ct.App.1985). Connor contends, and the trial court found, that she was so misled as to require that the revocation be rescinded, despite the fact that she took, rather than refused, the test. Because the statute clearly provides that the issue of whether the driver was informed of the rights and consequences of taking or refusing the test as required by Minn.Stat. § 169.123, subd. 2, may be raised at the implied consent hearing, Minn.Stat. § 169.123, subd. 6(2), this matter is properly before the court.

■ The trial court noted in its memorandum attached to the order that Wobschall's statement that "refusal to take the test implies guilt" was a misstatement of the law, was confusing and misleading, and that Connor's decision to submit to the test could have been different had she been correctly advised.

An analysis of the statutory scheme is necessary to determine this issue. The im-

plied consent law provides that if a person refuses to permit a test, none shall be given. Minn.Stat. § 169.123, subd. 4. In *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512 (Minn.1985), the supreme court held that a driver does not have a statutory or constitutional right to counsel before deciding whether to take a test. *Id.* at 513. The court first noted that a state may force a person to take a blood test if the person is suspected of driving while under the influence. It went on to say:

> The legislature, therefore, could repeal the implied consent law and direct police officers to administer chemical tests against the suspect's will. * * * The obvious reason the legislature has chosen to retain the implied consent law is to avoid the violent confrontations which could occur when people are forced to submit to testing. * * * The legislature's decision to let people refuse in the ordinary case and not be forced to take a test does not mean that a defendant has a *right* to refuse. Even though arrested drivers do not have a right to refuse, they do have an important decision to make, the kind of decision for which the advice of counsel could arguably be useful.

*Id.* at 517 (citations and footnotes omitted; emphasis in original).

■ While Connor did not have a right to refuse, she still had an "important decision" to make. The decision to refuse has both civil and criminal consequences. The Commissioner is directed to revoke for one year the license of a driver who refuses testing. Minn.Stat. § 169.123, subd. 4. In addition, the criminal DWI law was amended in 1984 specifically to provide:

> Evidence of the refusal to take a test is admissible into evidence in a prosecution under this section or an ordinance in conformity with it.

Minn.Stat. § 169.121, subd. 2 (1984). It is proper to advise a driver that a refusal to submit to testing will be used against the driver at trial. *Abe v. Commissioner of Public Safety*, 374 N.W.2d 788, 790 (Minn. Ct.App.1985).

Prior to 1983, introduction of such evidence was held to violate a defendant's state and federal constitutional right not to be compelled to be a witness against himself in a criminal case. *See State v. Andrews*, 297 Minn. 260, 264, 212 N.W.2d 863, 865 (1973), *cert. denied*, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974). The Minnesota Supreme Court recently held, without specifically overruling *Andrews*, that introduction of the absence of tests in accordance with statutory authority does not violate the defendant's privilege against self-incrimination. *State v. Willis*, 332 N.W.2d 180, 184 (Minn.1983). *Andrews* is no longer controlling law. *See Abe*, 374 N.W.2d at 790. In *Andrews*, however, the supreme court noted that

> testimony that the defendant was offered chemical testing to determine the alcoholic content of his blood and that he refused it gives rise to the inference that he thought the test would prove his guilt.

297 Minn. at 263 n. 1, 212 N.W.2d at 864–64 n. 1.

The legislature's purpose in providing that a driver's refusal may be introduced into evidence is painfully evident, particularly in light of the supreme court's discussion in *Andrews*. The legislature intended that the inference arise that a person who refuses to take the test is concerned that the test will show that he was in fact driving with an alcohol concentration of .10 or more. While, as this court stated in *Hallock*, uniformity in reading the implied consent advisory is highly encouraged, we do not find that the additional information the officer gave Connor was so confusing as to render the advisory illegal. *Hallock*, 372 N.W.2d at 83.

Connor argues that the officer's statement in this case directly addresses the legal consequences and evidentiary value of refusal to submit to testing. She contends that when the supreme court in *Nyflot* determined that a driver does not have a right to consult an attorney before testing, it surely did not envision that an officer would offer legal advice instead of an attorney. While we find the officer's state-

ment was not misleading, we would discourage officers from offering gratuitous legal advice.

## DECISION

The revocation of respondent's driving privileges is reinstated.

Reversed.