**Joy Marie FRIEDMAN,
Petitioner, Appellant,**

**v.**

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

**No. C9–89–1708.**

Court of Appeals of Minnesota.

May 8, 1990.

Review Granted July 6, 1990.

William R. Kennedy, Hennepin County Public Defender, Mark D. Fiddler, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joseph Plumer, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and FOLEY and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

Appellant Joy Marie Friedman was arrested for driving while under the influence and she refused to take a breath test pursuant to Minn.Stat. § 169.123, subd. 2(a)

(1988). Her driver's license was revoked for one year and she petitioned for judicial review. The trial court sustained the revocation and this appeal followed.

## FACTS

On the evening of March 12, 1989, Minneapolis Police Officer Lance Ahlrich responded to a report of a possible personal injury accident. When he arrived on the scene, he encountered appellant. During the course of his investigation, appellant took and failed a preliminary breath test. Based on this and other indicia of intoxication, Ahlrich arrested appellant for DWI. He transported her to the Minneapolis Police Department chemical testing room.

Ahlrich read appellant the implied consent advisory, and asked appellant if she understood it. Appellant did not reply. Ahlrich reread the advisory, after which he asked appellant if she understood it. Again, appellant did not respond. Ahlrich read the advisory a third time, and asked appellant if she understood it. She did not reply. Ahlrich then asked her if she would submit to a breath test. Appellant did not reply. Ahlrich asked her why she was refusing testing. She stated, "I already took one in the car."

The officer told appellant that the test she had taken in the squad car had been a preliminary breath test and that she was still required to submit to an Intoxilyzer test. Appellant continued to repeat that she did not feel she had to submit to another test because she had already taken one. Ahlrich attempted to explain the difference between the two tests, but appellant continually interrupted him and stated that she did not feel she needed to take another test. She never agreed to take the test.

At the hearing, appellant testified that she was very confused because she was being told she had to take a second breath test. She claimed she told Officer Ahlrich she did not understand the implied consent advisory because of the words he used. She did not deny that Ahlrich had read her the implied consent advisory three separate times. She stated that the officers told her

the test she had taken on the street "did not count" and that she would have to take another. She testified that she had taken the PBT at the scene of the accident because she was not intoxicated and she did not believe she would be arrested. She further testified that she needed the advice of counsel and that, had she had such advice, she would have taken the test. She also claimed that she had never told Officer Ahlrich that she would not take the test and that she was never offered the test.

The trial court concluded that appellant refused to submit to chemical testing and that she failed to show that at the time she refused, her refusal was based on reasonable grounds. It determined that the revocation procedure of Minn.Stat. § 169.123 was not unconstitutional under the Minnesota Constitution, article I, section 6 or 7.

Friedman appeals.

## ISSUES

1. Does article 1, section 6 of the Minnesota Constitution guarantee a person the right to consult with an attorney before deciding to submit to a chemical sobriety test?

2. Does article 1, section 7 of the Minnesota Constitution require that a person be given a *Miranda* warning prior to being asked to submit to a chemical sobriety test, in order to protect the person's right against self-incrimination?

3. Was the trial court clearly erroneous in finding appellant's refusal to submit to a breath test was not reasonable?

## ANALYSIS

### I.

■ The Minnesota Supreme Court held that a driver arrested for DWI has no statutory or federal constitutional right to consult with counsel before deciding whether to submit to chemical testing under Minn.Stat. § 169.123, the implied consent law. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 513 (Minn.), *appeal dismissed,* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). Appellant does not challenge this holding, but asserts her

right to counsel arises under the Minnesota Constitution, article I, section 6. Appellant argues that Minn.Stat. § 169.123, subd. 2(b)(4), requiring that a driver be advised of a right to counsel only after submitting to testing, is unconstitutional.

The majority opinion in *Nyflot* did not address state constitutional provisions. Justice Kelley, concurring specially, would have decided the issue solely on statutory grounds. Further, he believed that the state and federal constitutional provisions applied only to criminal proceedings, and that a constitutional discussion, when the proceeding is a civil one, is both irrelevant and premature. *Nyflot,* 369 N.W.2d at 518–19 (Kelley, J., concurring specially). The dissent, while analyzing the issue on federal constitutional and statutory grounds, referred to the Minnesota Constitution, stating that a "state is free to offer its citizens greater protection in its constitution than is offered by the federal law." *Id.* at 523 (Yetka, J., dissenting). Thus, the majority did not rule on the issue, and this court will do so herein.

The standard for determining the constitutionality of a statute is as follows:

[A] duly enacted statute carries with it a presumption of constitutionality. *See Guilliams v. Comm'r of Revenue,* 299 N.W.2d 138, 142 (Minn.1980). This court proceeds with great caution before declaring a statute unconstitutional, *see McGuire v. C & L Restaurant, Inc.,* 346 N.W.2d 605, 611 (Minn.1984), and will do so only if the challenging party demonstrates beyond a reasonable doubt that it violates a constitutional provision. *City of Richfield v. Local No. 1215, Int'l Ass'n of Fire Fighters,* 276 N.W.2d 42, 45 (Minn.1979). Furthermore, in matters properly enacted by the legislature, this court must defer to that body's judgment.

*State v. Hamm,* 423 N.W.2d 379, 380 (Minn.1988).

The Minnesota Constitution, article I, section 6 provides in relevant part:

In all criminal prosecutions * * * [t]he accused shall enjoy the right * * * to

have the assistance of counsel in his defense.

The federal counterpart is found in the sixth amendment, which provides:

> In all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel for his defense.

■ The fact that the federal constitutional provision is identical is persuasive, but not dispositive as to the scope of protection provided under the state constitutional provision. *Hamm*, 423 N.W.2d at 382. A state court may interpret its state constitution to offer greater protection of individual rights. *State v. Fuller*, 374 N.W.2d 722, 726 (Minn.1985).

In *Prideaux v. State, Department of Public Safety*, 310 Minn. 405, 411, 247 N.W.2d 385, 389 (1976), the supreme court said the decision of whether to take or refuse chemical testing is arguably a "critical stage" in the DWI proceeding. However, it did not rest its decision (providing a limited right to counsel) upon constitutional grounds, but instead relied upon statutory provisions. *Id.* at 414, 247 N.W.2d at 391. In *Nyflot*, the supreme court characterized the *Prideaux* discussion of the "critical stage" analysis as dictum, noting:

> At that time there was still some dispute as to when a prosecution was commenced for purposes of attachment of the sixth amendment right to counsel. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), which concluded that the sixth amendment right to counsel did not attach until judicial proceedings are formally commenced (by indictment, complaint or substitute for complaint), was a plurality opinion. Since then it has become clear that a majority of the Justices of the United States Supreme Court support the view espoused by the plurality in *Kirby*.

*Nyflot*, 369 N.W.2d at 515–16. Thus, under *Nyflot*, the decision to submit to testing is not a "critical stage" invoking the sixth amendment right to counsel under the United States Constitution.

Appellant argues that this court should interpret the state constitutional provision more broadly so that the decision of whether to submit to testing is a critical stage, with the right to counsel under section 6 attaching at this point. She asserts that the Minnesota Supreme Court has previously recognized a broader right to counsel under the Minnesota Constitution, article I, section 6, than under the federal sixth amendment right to counsel. *See, e.g., State v. Nordstrom*, 331 N.W.2d 901, 904 (Minn.1983).

The decision to interpret a state constitutional provision more broadly than a federal constitutional provision has been made after considering various factors. For example, the supreme court looked to the intent of the drafters of the Minnesota Constitution in determining a defendant in a misdemeanor prosecution was entitled to a jury of 12 persons. *Hamm*, 423 N.W.2d at 382. In addition, the court has rejected a defendant's claim that the use of his confession of a prior crime to his probation officer violated his privilege against compelled self-incrimination *under the Minnesota Constitution*, after examining whether the unique relationship between probationer and probation officer within the Minnesota criminal justice system, compelled a different result. *State v. Murphy*, 380 N.W.2d 766, 770–71 (Minn.1986).

The supreme court has also cited the exercise of its supervisory power to ensure the fair administration of justice in establishing a broader right to counsel than under federal law, and required a valid waiver of the right to counsel on the record when a guilty plea is entered on misdemeanor DWI, without which a conviction cannot be used to enhance the term of incarceration for a subsequent offense. *Nordstrom*, 331 N.W.2d at 905. None of these factors compels the court here to adopt appellant's argument, nor does appellant identify any other unique factors within the Minnesota implied consent scheme which would dictate a higher standard of protection under the state constitution.

II.

■ Appellant was advised that the refusal to take a test would be offered into evidence against her at trial. Minn.Stat.

§ 169.123, subd. 2(b)(5). Appellant argues that she has the right not to have her refusal used against her at trial because she was not given a *Miranda*-type warning, and informed of her right to remain silent and her right to counsel before deciding whether to submit to testing. She contends this violated her privilege against self-incrimination as guaranteed by article 1, section 7 of the Minnesota Constitution. This provides in relevant part:

> No person shall * * * be compelled in any criminal case to be a witness against himself * * *.

Again, the Fifth Amendment of the United States Constitution is almost identical and provides in relevant part:

> No person * * * shall be compelled in any criminal case to be witness against himself * * *.

In *Miranda v. Arizona*, 384 U.S. 436, 468–71, 86 S.Ct. 1602, 1624–26, 16 L.Ed.2d 694 (1966), the Supreme Court held that, in order to protect an accused's fifth amendment privilege against self-incrimination, prior to custodial interrogation, a person must be warned of the right to remain silent, the right to counsel, and that anything stated may be used in evidence against the person. *See Nyflot*, 369 N.W.2d at 516. Under the United States Constitution, this right does not apply to the limited questioning of drivers to determine if they will consent to a chemical test. *South Dakota v. Neville*, 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983); *Nyflot*, 369 N.W.2d at 516. Likewise, refusal to take a test, after being lawfully requested to do so, is not an act coerced by the officer and is not protected by the federal privilege against self-incrimination. *Neville*, 459 U.S. at 564, 103 S.Ct. at 923.

The Minnesota Supreme Court noted that as a practical matter, it makes sense for police not to give the *Miranda* warning and interrogate an arrested driver until after completing the implied consent portion of the investigation, because of the danger the *Miranda* warning will confuse the driver. *Nyflot*, 369 N.W.2d at 516.

Appellant relies upon an earlier case which was never explicitly overruled. In *State v. Andrews*, 297 Minn. 260, 261, 212 N.W.2d 863, 864 (1973) *cert. denied*, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974), the Minnesota Supreme Court held that admission of evidence that a defendant refused to submit to testing in a prosecution for driving under the influence of alcohol, under a predecessor of Minn.Stat. § 169.121 (1988), violated the privilege against compelled self-incrimination pursuant to the federal fifth amendment and the Minnesota Constitution, article I, section 7 and Minn.Stat. § 169.121, which made chemical testing voluntary on the defendant's part.

In *State v. Willis*, 332 N.W.2d 180, 183 (Minn.1983), the supreme court held that a new statutory provision in the DWI law providing that evidence of the absence of a test may be submitted without comment, with an appropriate jury instruction, did not violate a defendant's constitutional privilege against self-incrimination. The majority noted that after oral argument, the United States Supreme Court in *Neville*, 459 U.S. at 564, 103 S.Ct. at 923, held that admission into evidence of a defendant's refusal to submit to testing did not violate the fifth amendment. The Minnesota Supreme Court stated "[w]hether we would interpret our state constitutional provision in the same manner is not now before us." *Willis*, 332 N.W.2d at 183 n. 1. Three members of the court in a concurring opinion would have explicitly overruled *Andrews*. *Id.* at 185–86 (Peterson, J., concurring specially, joined by Amdahl, C.J. and Simonett, J.).

While the supreme court has not yet been directly faced with the effect of *Neville* on *Andrews* and the interpretation of section 7, this court is faced with the question today. We believe that *Andrews'* precedential value is very questionable. The concurrence in *Willis* would have overruled it explicitly. In *Nyflot*, the supreme court cited *Neville* to hold the limited questioning of a driver to determine if she will consent to a test is not "interrogation" requiring the *Miranda* right to counsel. This court, while not addressing Minnesota

Constitutional provisions, has stated that *Neville* destroys *Andrews'* precedential value. *Abe v. Commissioner of Public Safety*, 374 N.W.2d 788, 790 (Minn.App. 1985). In *Nyflot*, the supreme court stressed that as a practical matter, it makes sense for police not to give the *Miranda* warning and interrogate an arrested driver until after completing the implied consent portion of the investigation because of the danger that the *Miranda* warning will confuse the driver. *Nyflot*, 369 N.W.2d at 516. It is inconceivable under these circumstances that the supreme court would hold that under the state constitutional provision the driver should after all be given a *Miranda*-type warning prior to the test request before evidence of her refusal may be entered into evidence.

In light of *Nyflot*, we do not find compelling reasons to hold that evidence of appellant's refusal to take a test would constitute a violation of appellant's privilege against self-incrimination under the Minnesota Constitution. Again, none of the factors discussed above which have been present in other cases in which the Minnesota Constitution has been interpreted more broadly than the United States Constitution have been made apparent to this court. Minn.Stat. § 169.123, subd. 2(b)(5) does not violate article I, section 7 of the Minnesota Constitution.[1]

### III.

■ Appellant refused to submit to testing under the implied consent law. She raises as an affirmative defense under Minn.Stat. § 169.123, subd. 6 that her refusal was reasonable because the officer failed to dispel her confusion as to the difference between a PBT and a breath test. *State, Department of Public Safety v. Held*, 311 Minn. 74, 75, 246 N.W.2d 863, 864 (1976). Whether a refusal is reasonable may be a question of fact for the trial court. *Beckey v. State, Department of Highways*, 291 Minn. 483, 486, 192 N.W.2d 441, 444–45 (1971).

The trial court found the officer attempted to explain appellant's obligations to her. Under the facts presented, it was not clearly erroneous for the trial court to hold the refusal was not reasonable. *Held*, 311 Minn. at 75, 246 N.W.2d at 864.

### DECISION

The order of the trial court sustaining the revocation of appellant's driver's license is affirmed.

Affirmed.

---

1. It must be kept in mind at all times when interpreting any Minnesota court decision that Minn.Stat. § 169.123 (implied consent) is *civil*, whereas Minn.Stat. § 169.121 (driving under the influence) is *criminal*. The procedures utilized, the respective burdens of proof and burdens of persuasion, the proper modes of evidence gathering techniques, and the scope of appellate review that are applied may be different in a civil case than in a criminal case. The case before us is civil. Thus, we do not speak to what would be our analysis in a criminal case.