STATE of Minnesota, Respondent,

v.

Stephen Wayne BERGE, Appellant.

No. C8-90-1219.

Court of Appeals of Minnesota.

Jan. 8, 1991.

Review Granted March 15, 1991.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Jeffrey D. Thompson, Rice County Atty., Kevin P. Shea, Asst. County Atty., Faribault, for respondent.

Considered and decided by WOZNIAK, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Appellant Stephen Wayne Berge was found guilty of driving under the influence in violation of Minn.Stat. § 169.121, subd. 1(a), 3(a) (1988). The trial court accepted as the strongest available evidence of guilt appellant's refusal to submit to a breathalyzer test. Appellant contends this evidence was improperly admitted against him. We affirm.

## FACTS

In the early morning hours of May 9, 1989, appellant was caught speeding by the Rice County Sheriff's Department. When the deputy approached his vehicle to advise appellant of the basis for the stop, the sheriff detected the odor of alcohol and other indicia of intoxication. Appellant was asked to perform a variety of field sobriety tests, which he failed.

Appellant refused a blood alcohol test relying on his fifth amendment protection against self-incrimination. It was stipulated by the parties, and accepted by the court, that the state would rely upon appellant's refusal of testing as the strongest available evidence of guilt. The trial court held the refusal admissible into evidence and found appellant guilty based upon stipulated facts. This appeal followed.

## ISSUE

Is the introduction of a defendant's refusal to submit to a blood test pursuant to Minn.Stat. § 169.121, subd. 2(b) compelled self-incrimination in violation of Minn. Const. art. I, § 7?

## ANALYSIS

Appellant claims the admission into evidence of his refusal to submit to alcohol testing violates the Minnesota constitutional protection against compelled self-incrimination. The provision under which he claims protection, which is identical to the United States constitutional provision, states: "[n]o person shall * * * be compelled in any criminal case to be a witness

against himself." Minn. Const. art. I, § 7; U.S. Const. amend. V.

In support of his argument, appellant urges this court to follow *State v. Andrews,* 297 Minn. 260, 262–63, 212 N.W.2d 863, 864 (1973). In *Andrews,* the supreme court held the prohibition of compelled self-incrimination in both the United States Constitution and the Minnesota Constitution precluded the introduction of evidence of the refusal to submit to blood alcohol testing. The court went on to hold a 1971 amendment to Minn.Stat. § 169.121, subd. 2 deleting the language "but the refusal to permit the taking of specimens for such chemical analysis shall not be admissible in evidence" was not indicative of the legislature's intent to allow such tests into evidence. *Id.* at 264, 212 N.W.2d at 865. Therefore there was an insufficient statutory, as well as a constitutional, basis for allowing introduction of refusal.

In *State v. Willis,* 332 N.W.2d 180 (Minn. 1983), our supreme court again found the federal and state constitution protections against compelled self-incrimination coextensive. As in *Andrews,* the protection was measured against a 1982 revision of Minn.Stat. § 169.121. That statute provided:

> Evidence of the absence of tests is admissible in a prosecution under this section without any comment and with a jury instruction, where applicable, that there shall be no speculation as to the reason for the absence and that no inference is to be drawn from the absence.

Minn.Stat. § 169.121, subd. 2(b) (1982).

Shortly before *Willis* was released, the United States Supreme Court decided *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). That case went a step beyond *Willis* and held a statute allowing admission into evidence of a defendant's refusal to submit to testing was not violative of the fifth amendment of the United States Constitution. Since that question was not presented by the Minnesota statute, the Minnesota Supreme Court noted "[w]hether we would interpret our state constitutional provision in the same

manner [as *Neville*] is not now before us." *Willis,* 332 N.W.2d at 183 n. 1.

Apparently in response to the *Neville* decision, our legislature amended Minn. Stat. § 169.121, subd. 2(b) to its present form, which provides "[e]vidence of the refusal to take a test is admissible into evidence in a prosecution under this section." 1983 Minn.Laws ch. 306, § 3. All parties agree the clear language of this statute evinces a legislative intent which cures the statutory infirmity found in *Andrews.* Likewise, there is agreement the statute passes constitutional muster under the fifth amendment to the United States Constitution. Thus, the question here is the one referred to but not answered in *Willis;* whether this statute offends the Minnesota constitutional protection against compelled self-incrimination.

We note initially that "[e]very presumption is invoked in favor of the constitutionality of the statute." *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979). At the same time, we are cognizant of the axiom that "a state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution." *State v. Fuller,* 374 N.W.2d 722, 726 (Minn.1985). While *Fuller* notes state constitutions constitute the "first line" of constitutional protection, it further recognizes the manner in which this protection is applied must be qualified:

> This, of course, does not mean that we will or should cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution. Indeed, a decision of the United States Supreme Court interpreting a comparable provision of the federal constitution that, as here, is textually identical to a provision of our constitution, is of inherently persuasive, although not necessarily compelling, force.

*Id.* at 726–27.

Despite the ample authority indicating Minnesota constitutional protections *may* be broader than United States constitutional protections, we have found no authority

for the proposition that Minn. Const. art. I, § 7 *is* broader than the protection against compelled self-incrimination in U.S. Const. amend. V. We believe this is not the appropriate court to determine, on first impression, that the Minnesota Constitution offers such breadth of protection. In so holding, we take notice of the language in *Fuller,* 374 N.W.2d at 726, stating quite specifically that it is the province of the "state supreme court" to extend protection of the state constitution beyond that offered by the United States Constitution. We therefore read the Minnesota Constitution as coextensive with the United States Supreme Court's reading in *Neville,* 459 U.S. 553, 103 S.Ct. 916, of the federal constitution on this point.[1]

## DECISION

Affirmed.

RANDALL, Judge (dissenting).

The majority finds this case to be one of first impression, and it finds Minn. Const. art. I, § 7 to be co-extensive with the United States Constitution, Amendment V. I cannot accept the majority's conclusion. The fact scenario of this case has been squarely addressed by the Minnesota Supreme Court once before, and the state supreme court ruled that Minn. Const. art. I, § 7 precludes the introduction of a driver's refusal to submit to chemical testing into evidence against him in a criminal trial.

The Minnesota Supreme Court in *State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), *cert. denied,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974), following earlier precedent (*see State v. McCarthy,* 259 Minn. 24, 104 N.W.2d 673 (1960)), held that

the admission into evidence of a defendant's refusal to submit to chemical testing in a DWI prosecution "violates a defendant's right not to be compelled in any criminal case to be a witness against himself. U.S. Const. Amend V; *Minn. Const. art 1, § 7." Andrews,* 297 Minn. at 261, 212 N.W.2d at 864 (emphasis added). The majority appears to recognize in its analysis that *Andrews* precluded evidence of a refusal to submit to chemical testing on the basis of Minnesota constitutional law.

To date, *no* Minnesota Supreme Court decision has over-ruled the constitutional prohibition enunciated in *Andrews.* The state supreme court has had two opportunities to over-rule *Andrews* and has specifically declined to do so each time.

In 1983, the Minnesota Supreme Court decided *State v. Willis,* 332 N.W.2d 180 (Minn.1983). The statute at issue in *Willis* provided:

> Evidence of the absence of tests is admissible in a prosecution under this section without any comment and with a jury instruction, where applicable, that there shall be no speculation as to the reason for the absence and that no inference is to be drawn from the absence.

*Willis,* 332 N.W.2d at 182 (*citing* Minn. Stat. § 169.121, subd. 2(b) (1980)). The *Willis* court held that the statute as written and as followed by the trial court, did not "violate a defendant's constitutional right to be free from compelled self-incrimination." *Willis,* 332 N.W.2d at 182.

The court conducted a review of the line of cases of which *Andrews* is a part, and it specifically drew a distinction between the constitutionally based prohibition of *Andrews* and the version of Minn.Stat. § 169.121, subd. 2(b) (1980) then before it:

1. We note the Minnesota Supreme Court has recently granted review of a decision of this court that considered the scope of Minn. Const. art. I, § 7 in relation to introduction of evidence of refusal without a *Miranda* warning. *Friedman v. Comm'r of Pub. Safety,* 455 N.W.2d 93 (Minn.App.1990), *pet. for rev. granted* (Minn. Jul. 6, 1990). Our decision in *Friedman,* 455 N.W.2d at 97–98, specifically considered the *Andrews* decision's precedential value, and specifically found it does not extend Minnesota constitutional protections beyond federal limits. Our

decision in *Friedman* is distinguishable in that the issue was not the constitutionality of Minn. Stat. § 169.121, subd. 2(b), but rather its application without a *Miranda* warning. While a decision by the Minnesota Supreme Court in *Friedman* may be instructive, it need not be dispositive of this case; the supreme court may choose to rule only on the *Miranda* issue. We therefore do not stay this opinion, but certainly encourage the parties to petition for review pending the outcome of *Friedman.*

The application of § 169.121, subd. 2(b), does not violate a defendant's constitutional privilege against self-incrimination as spelled out above [referring to *Andrews*]. *The statute does not permit the introduction of evidence that a defendant refused chemical testing,* and it contains sufficient safeguards to insure that the jury will not draw such an inference.

*Willis,* 332 N.W.2d at 183 (emphasis added).

The *Willis* court was clear that it was *not* over-ruling *Andrews.* The court specifically pointed out that the question of the admissibility of a defendant's refusal to submit to chemical testing was not then at issue:

> After oral argument in this case the United States Supreme Court decided *South Dakota v. Neville,* [459 U.S. 553], 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), holding that the admission into evidence of a defendant's refusal to submit to such a test does not violate the Fifth Amendment to the United States Constitution. *Whether we would interpret our state constitutional provision in the same manner is not now before us.*

*Willis,* 332 N.W.2d at 183 n. 1 (emphasis added). The question decided in *Andrews* and reconsidered in *Willis* has not again come squarely before either the Minnesota Supreme Court or the Minnesota Court of Appeals until now.

The rule of *Andrews* is good law in Minnesota. The majority refers to *Friedman v. Comm'r of Pub. Safety,* 455 N.W.2d 93 (Minn.App.1990), *pet. for rev. granted* (Minn. July 6, 1990), as authority for a reduction in the precedential value of *Andrews.* I disagree strongly. First of all, *Friedman* involved civil implied consent not a pure criminal case as we have before us today. In addition, the following precise quote from *Friedman* explicitly recognized the distinction:

> It must be kept in mind at all times when interpreting any Minnesota court decision that Minn.Stat. § 169.123 (implied consent) is *civil,* whereas Minn.Stat. § 169.121 (driving under the influence) is

*criminal.* The procedures utilized, the respective burdens of proof and burdens of persuasion, the proper modes of evidence gathering techniques, and the scope of appellate review that are applied may be different in a civil case than in a criminal case. The case before us is civil. Thus, we do not speak to what would be our analysis in a criminal case.

*Id.* at 98 n. 1 (emphasis in original). Thus, I perceive *Friedman* not as weakening the issue framed in this case, but strengthening it.

I agree the United States Constitution, Amendment V, by itself, does not prohibit the admission into evidence of a defendant's refusal to be chemically tested. *See South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). However, *Andrews* was not based solely on the Minnesota Supreme Court's analysis of the United States Constitution. The court in *Andrews* based its decision *equally* on the Minnesota Constitution, art. I, § 7. *Andrews,* 297 Minn. at 216–62, 212 N.W.2d at 864. (*See also Minnesota v. Andrews,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974) (certiorari denied because the judgment below rested upon adequate state grounds)). The decision in *Neville* does not control any portion of *Andrews* concerning the scope and breadth of the Minnesota Constitution. *See, e.g., State v. Fuller,* 374 N.W.2d 722, 727 (Minn.1985).

*Neville* is not persuasive here. The issue in that case, which we face here, was rejected by the Minnesota Supreme Court, in the context of Minn. Const. art. I, § 7 when it decided *Andrews.* In *Andrews,* the State made the same arguments as were later made to the United States Supreme Court in *Neville.* Applying Minn. Const. art. I, § 7, the Minnesota Supreme Court rejected the arguments and found that a defendant's refusal to take a chemical test (having been given the right to refuse statutorily) was both compelled and testimonial in nature. The *Andrews* court stated that

> it does not follow, as the state contends, that since an arrested motorist has no constitutional (as opposed to statutory)

right to refuse to submit to chemical testing, he has no constitutional right to have evidence of that refusal excluded from evidence. * * * The argument for holding that admission of evidence of refusal in this context does violate a defendant's constitutional rights is well stated in Note, 78 Yale L.J. 1074, 1084:

" * * * Evidence of a suspect's refusal * * * is relevant to the crime charged only in its testimonial aspect, as the approximate equivalent of the statement, 'Because I fear that the examination will produce evidence of my guilt, I refuse to permit it.' Therefore, the privilege against self-incrimination seems relevant. There remains the question of whether such testimonial evidence is 'compelled' for purposes of applying the fifth amendment standard. In one sense the testimonial action is obviously not compelled—the state is not ordering the suspect to refuse cooperation. But the state does compel a suspect to choose between submitting to a perhaps unpleasant examination and producing testimonial evidence against himself. The suspect's option to submit to a lawfully imposed burden instead of implicitly testifying against himself does not necessarily save the procedure: lifting a lawful burden—the examination—is in effect an inducement that casts doubt on the 'voluntariness' of the testimonial evidence thereby obtained."

*Andrews*, 297 Minn. at 262, 212 N.W.2d at 864. There is *no* subsequent decision by the Minnesota Supreme Court which retracts this statement of a defendant's rights under Minn. Const. art. I, § 7.

This appeal is not a case where the Court of Appeals is called upon to decide whether a clause of the Minnesota Constitution is broader than a similar clause of the United States Constitution. This appeal is not about whether Minn. Const. art. I, § 7 should for the first time be extended beyond the federal limits of *Neville*. The Minnesota Supreme Court, in deciding *Andrews*, set the boundary of the protection afforded a defendant under Minn. Const. art. I, § 7. The question before this court is simply whether the Minnesota Supreme Court has subsequently retreated from the frontlines of state constitutional protections established in *Andrews*.

It is superficial to argue that the United States Supreme Court paved the way for our Supreme Court to retreat when *Neville* was decided. It must be remembered that when the United States Supreme Court considered the issue in *Neville*, in light of the constitution with which it was entrusted, the boundary of the federal constitution's fifth amendment had not previously been established in regard to that issue. The *Neville* court did not retreat. It simply declined to expand the frontiers of federal constitutional protections. The Minnesota Supreme Court's analysis in *Andrews* was primarily a discussion of the issue *in light of the constitution with which it was entrusted*. Unlike the United States Supreme Court, the Minnesota Supreme Court expanded the frontiers of state constitutional protection.

The *Willis* decision was the state supreme court's first opportunity to over-rule or retreat from *Andrews*. The supreme court also had the opportunity in another criminal case, *State v. Gross*, 335 N.W.2d 509, 510 n. 1 (Minn.1983). In neither case was *Andrews* over-ruled.

The issue in *Gross* was whether evidence of breath test results, taken pursuant to the implied consent statute, should have been suppressed at trial because the arresting officer did not give the defendant a *Miranda* warning prior to the test. The decision relied on *Neville*. The court adopted the position of *Neville* to hold that the implied consent procedure was not custodial interrogation requiring a *Miranda* type warning. *Gross*, 335 N.W.2d at 510.

The court distinguishes *Andrews*, but it does not over-rule its earlier decision when it writes:

Even if it is true, as we held in *Andrews*, that a refusal to test gives rise to an inference of guilt, it does not follow logically that police must give a person a *Miranda* warning before advising the

person of the provisions of the implied consent law.

*Gross,* 335 N.W.2d at 510 n. 1. The court's decision goes on to say a choice of "refusal thus enjoys no prophylactic *Miranda* protection *outside the basic Fifth Amendment protection.*" *Id.* at 510 (quoting *Neville,* 459 U.S. at 565 n. 15, 103 S.Ct. at 923 n. 15) (emphasis added). The supreme court has *not* stated that the talisman of "implied consent" strips a citizen of all basic protection against self-incrimination when dealing with the state *in a criminal context.*

In this criminal case, even though no *Miranda* warning was given, appellant expressly refused to submit to chemical testing by asserting his basic right of protection against self-incrimination. This case can not be distinguished from one where a police investigator might interview a robbery suspect in a *Terry* stop setting. No *Miranda* warning is required, yet no one argues the suspect does not have the constitutional right, when he invokes fifth amendment rights on his own, to refuse to answer questions because they may tend to incriminate him.

It is an illusory protection where evidence of invocation of a right can be offered in a criminal prosecution to raise a negative inference against the person availing themselves of the protection. *See Andrews,* 297 Minn. at 263 n. 1, 212 N.W.2d at 864 n. 1. The *Andrews* decision stands four-square against such an illusory protection existing in Minn. Const. art. I, § 7. The Minnesota Supreme Court has not over-ruled this statement of Minnesota constitutional law. I do not pretend to.

Andrews is a clear pronouncement of the strength of the Minnesota Constitution. The Minnesota Supreme Court has recently re-emphasized:

It is axiomatic that a state supreme court may interpret its own constitution to offer greater protection of individual rights than does the federal constitution. *Indeed, as the highest court of this state, we are "independently responsible for safeguarding the rights of [our] citizens."*

*State v. French,* 460 N.W.2d 2, 8 (Minn. 1990) (emphasis in original). The state constitution makes the supreme court the final authority and last resort in protection of human, political and property rights guaranteed by that constitution. *Petition for Integration of Bar of Minnesota,* 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943). The Minnesota Supreme Court set out, in Andrews, the rights guaranteed by Minn. Const. art. I, § 7.

Minn.Stat. § 169.121, subd. 2(b) (1988) is the Minnesota legislature's attempt to incorporate the ruling of Neville into Minnesota law.

The legislature's purpose in providing that a driver's refusal may be introduced into evidence is painfully evident, particularly in light of the supreme court's discussion in *Andrews.* The legislature intended that the inference arise that a person who refuses to take the test is concerned that the test will show that he was infact driving with an alcohol concentration of .10 or more.

*Connor v. Comm'r. of Public Safety,* 386 N.W.2d 242, 245 (Minn.App.1986) (emphasis added). The inference which Minn.Stat. § 169.121, subd. 2(b) is intended to create is precisely the inference the Minnesota Supreme Court prohibited in *Andrews* by applying Minn. Const. art. I, § 7. *See Andrews,* 297 Minn. at 261–63, 212 N.W.2d at 864.

The Minnesota Supreme Court has enunciated, in *Andrews,* constitutional limitations upon the state, and the legislative attempt to void the Supreme Court's ruling on state constitutional law is a violation of the separation of state powers under Minn. Const. art. III, § 1. Legislative power is strong, but the judiciary will declare a statute invalid if that statute clearly transcends constitutional guarantees. *George Benz Sons, Inc. v. Ericson,* 227 Minn. 1, 10, 34 N.W.2d 725, 731 (1948). *Andrews* enunciates a constitutional limitation, and Minn.Stat. § 169.121, subd. 2(b) is an improper attempt to circumvent that limitation.

The constitutional protection of the self-incrimination clause of Minn. Const. art. I, § 7:

must receive a liberal construction, to the end that personal rights may be protected. * * * Better an occasional miscarriage of justice than that the constitutional rights of the meanest man should be disregarded.

*State v. Olson,* 274 Minn. 225, 231–32, 143 N.W.2d 69, 74 (1966) (quoting *State v. Gardner,* 88 Minn. 130, 139, 92 N.W. 529, 533 (1902)).

This is not a case of first impression. The controlling facts of this case are indistinguishable from the facts that control the analysis in *State v. Andrews.* I dissent and would reverse appellant's conviction based on guarantees against self-incrimination provided appellant by the constitution of the State of Minnesota.