**STATE of Minnesota, Respondent,**

v.

**Wayne William WILLIS, Appellant,**

**and**

**Alexina M. Endrizzi, Appellant.**

**No. C9-82-1054.**

Supreme Court of Minnesota.

April 8, 1983.

Patterson-Restovich Law Office, George F. Restovick and Kevin A. Lund, Rochester, for Willis.

Dingle, Suk, Wendland & Walters and Terrence M. Walters, Rochester, for Endrizzi.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, DeWayne P. Mattson, County Atty., Rochester, Frederick S. Suhler, Jr., Rochester City Atty., Rochester, for respondent.

SCOTT, Justice.

This appeal involves the certification of questions by the Olmsted County District Court to this court as important and doubtful under Minn.R.Crim.P. 29.02, subd. 4.

Defendants Wayne William Willis and Alexina M. Endrizzi are charged in gross misdemeanor prosecutions with driving under the influence in violation of Minn.Stat. § 169.121, subds. 1(a) and 3 (1982). They brought pretrial motions challenging the constitutionality of provisions of the Act of March 19, 1982, ch. 423, 1982 Minn.Laws 288, that (1) permit the introduction of evidence of the absence of tests in certain circumstances, and (2) provide for an enhanced penalty for those violating § 169.121 within five years of a prior conviction. The trial court denied these motions. We affirm.

The facts, which are not disputed, are as follows: Defendant Willis was observed on April 23, 1982, improperly driving a vehicle, and appeared intoxicated when stopped. He was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Minnesota implied consent statute, Minn.Stat. § 169.123, subd. 2(b) (1982). He failed a field sobriety test and apparently refused blood, breath or urine tests.

Defendant Endrizzi was observed on May 1, 1982, driving erratically, and appeared intoxicated when stopped. She was generally uncooperative and abusive. She was advised of her rights under the implied consent statute and refused blood, breath or urine tests.

Each defendant had been convicted of violating Minn.Stat. § 169.121 within five years of the alleged violations from which this appeal is taken.

We have paraphrased the certified questions as follows:

(1) Does Minn.Stat. § 169.121, subd. 2(b) (1982), which permits, with certain limitations, the introduction of evidence of the absence of tests in prosecutions under § 169.121, violate a defendant's constitutional privilege against self-incrimination?

(2) Is that portion of Minn.Stat. § 169.121, subd. 2(b) (1982), which permits with certain limitations the introduction of evidence of the absence of tests, a usurpation of the powers reserved to the judicial branch under the Minnesota Constitution, Minn. Const. art. 3, § 1?

(3) Is Minn.Stat. § 169.121, subd. 3(a) (1982), which makes a violation of Minn. Stat. § 169.121 within five years of a prior conviction under that section a gross misdemeanor, an impermissible *ex post facto* law under the state and federal constitutions, Minn. Const. art. 1, § 11, and U.S. Const. art. 1, § 10?

■ 1. Section 3 of the Act of March 19, 1982, ch. 423, 1982 Minn.Laws 288, 290, amended Minn.Stat. § 169.121, subd. 2(b) (1980), by adding the following language:

Evidence of the absence of tests is admissible in a prosecution under this section without any comment and with a jury instruction, where applicable, that there shall be no speculation as to the reason for the absence and that no inference is to be drawn from the absence.

Defendants argue that the admission of evidence that there are no blood, breath or urine tests will violate their constitutional right to be free from compulsory self-incrimination. They reason that evidence of the absence of tests and the required jury instruction will focus the jury's attention on the absence of tests and that the jury will, in disregard of the instruction, draw the inference that no tests exist because the defendants refused to take them. It is further argued that once evidence of the absence of tests is introduced, they will as a practical matter be forced to take the stand to explain why no tests were taken.

The introduction of evidence of the absence of tests in accord with Minn.Stat. § 169.121, subd. 2(b), as amended, does not violate a defendant's constitutional right to be free from compelled self-incrimination. A review of the statutory and decisional authority concerning the admission of a defendant's refusal to take a blood, breath or urine test is appropriate.

*State v. McCarthy,* 259 Minn. 24, 104 N.W.2d 673 (1960), held it was prejudicial error in a prosecution under § 169.121 for the state to offer evidence that a defendant had been offered a test and that no test was taken, because the clear implication of such testimony is that the defendant had refused the test. The decision was based in part on the state constitutional provision against self-incrimination and in part upon the statutory requirement that the test be voluntary.

Following the *McCarthy* decision the legislature in 1961 amended Minn.Stat. § 169.-121, subd. 2, by adding the following language: "but the refusal to permit the taking of specimens for such chemical analysis shall not be admissible in evidence." Act of April 20, 1961, ch. 454, § 9, 1961 Minn.Laws 713, 717. By Act of June 7, 1971, ch. 893, § 2, 1971 Minn.Laws 1811, 1813, the legislature deleted this provision from § 169.121, subd. 2.

In *State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), *cert. denied,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974), the court again held that the introduction in a DWI prosecution of evidence that a defendant refused to submit to chemical testing violated his state and federal [1] constitutional right not to be compelled in any criminal case to be a witness against himself. The court held that the refusal to submit to testing was testimonial in nature and analogized the situation to one where the state improperly offers evidence that a defendant was advised of his *Miranda* rights and chose to remain silent. Just as a defendant's assertion of his constitutional right to remain silent or to an attorney cannot be used against him, neither can his assertion of his statutory right to refuse the test be used as evidence of his guilt. *Cf., State v. Roberts,* 296 Minn. 347, 208 N.W.2d 744 (1973); *State v. Beck,* 289 Minn. 287, 183 N.W.2d 781 (1971). The refusal to take the test, like a refusal to speak, would give rise to an infer-

ence of guilt. By refusing the test, the defendant is in effect testifying against himself.

In *State v. Schlinger,* 299 Minn. 212, 216 N.W.2d 835 (1974), the court declined to overrule *Andrews* and again held the admission of evidence that a defendant refused a test to be prejudicial error.

The application of § 169.121, subd. 2(b), does not violate a defendant's constitutional privilege against self-incrimination as spelled out above. The statute does not permit the introduction of evidence that a defendant refused chemical testing, and it contains sufficient safeguards to insure that the jury will not draw such an inference. The statute is designed to provide a method by which the jury may be informed that the prosecution has no tests and by which the legal effect of the absence of such tests can be made clear to a jury.

The statute does nothing more than permit the prosecution to tell the jury directly what will be obvious to them at the end of trial in any case—that the state has no evidence in the form of chemical tests. There is a danger that a jury, whether it learns directly or indirectly that there are no tests, will speculate as to the reason why no test results were offered. Under the statute, however, the risk that a jury may draw an inference adverse to the defendant is minimized by the requirements that (1) no comment be made concerning the absence of tests and (2) that the jury be instructed not to speculate as to the reason therefor and that no inference is to be drawn from the absence. The procedure contemplated by the statute does not violate the privilege against self-incrimination because the jury is not likely to infer that the defendant refused to submit to testing.

Neither is there any merit to defendants' argument that the statute is irrational. Defendant's argument, appealing at first glance, is that the statute is irrational in

---

1. After oral argument in this case the United States Supreme Court decided *South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), holding that the admission into evidence of a defendant's refusal to submit

to such a test does not violate the Fifth Amendment to the United States Constitution. Whether we would interpret our state constitutional provision in the same manner is not now before us.

that it in one breath permits the introduction of evidence that there are no tests, and in the next breath requires that the jury be instructed not to draw any inference from that fact.

The statute does not, as defendants suggest, provide for the meaningless introduction of evidence of the absence of tests. The statute serves a curative purpose. The practice of administering chemical tests to persons suspected of drunk driving, particularly chemical analysis of the breath, is a matter of which the public is generally aware. The statute simply provides a means by which the jury can be fully advised of the legal effect of the absence of test results at trial.

The trial court correctly determined that the application of § 169.121, subd. 2(b), does not violate a defendant's constitutional privilege against self-incrimination.

2. Defendant Endrizzi claims that § 169.121, subd. 2(b), violates the separation of powers clause of the Minnesota Constitution, Minn. Const. art. 3, § 1, because it purports to restrict the power of the courts to determine the relevancy and admissibility of evidence of the absence of tests. The statute should not be invalidated on that basis.

Although the legislature has clearly acknowledged the authority of this court to regulate evidentiary matters in both civil and criminal actions,[2] this court has upheld the legislature's authority to establish certain types of evidentiary rules, such as those which make certain items prima facie proof of a fact or otherwise regulate the burden of proof. *See, e.g., Lott v. Davidson,* 261 Minn. 130, 141–2, 109 N.W.2d 336, 344 (1961) (legislature has power to create presumption of due care in certain negligence actions); *Burke v. Lacock,* 41 Minn. 250, 253–4, 42 N.W. 1016, 1017 (1889) (legislature can make sheriff's certificate of sale in mortgage foreclosure prima facie proof of valid sale).

Inherently, the courts have the power to establish rules of evidence. *Northern*

*States Power Company v. Esperson,* 274 Minn. 451, 456, 144 N.W.2d 372, 376 (1966). 1 *Wigmore on Evidence* (1982 Supp.), § 7a at 75–6, states that the judicial function constitutionally empowers the courts to make their own rules of procedure, including rules of evidence, and this prerogative of the courts to formulate and alter rules of evidence ought not to be doubted.

Due respect for the coequal branches of government requires the court to exercise great restraint before striking down a statute as unconstitutional, particularly when it involves a determination of what is a legislative and what is a judicial function. *Sharood v. Hatfield,* 296 Minn. 416, 423, 210 N.W.2d 275, 279 (1973).

The statute involved in this case in no way interferes with the judiciary's function of ascertaining facts and applying the law to the facts established. It merely provides a method for enhancing the likelihood that a jury will not impermissibly speculate as to the reason no test results are offered in prosecutions under § 169.121. As a matter of comity we will enforce this statute, since it neither interferes with nor impairs a judicial function.

3. Defendant Willis claims that § 169.121, subd. 3(a), which makes a violation of § 169.121 within five years of a prior conviction under that section a gross misdemeanor, violates the *ex post facto* clauses of the state and federal constitutions. Section 3 of the 1982 Act amended § 169.121, subd. 3, by adding the following language:

The following persons are guilty of a gross misdemeanor: (a) A person who violates this section or an ordinance in conformity therewith within five years of a prior conviction under this section or an ordinance in conformity therewith; * *.

Prior to April 1, 1982, the effective date of the above-quoted provision, a subsequent conviction under § 169.121 was a misdemeanor, with a maximum punishment of a

2. *See* Minn.Stat. § 480.0591 (1982).

fine of $500, 90 days imprisonment, and a suspension of the driver's license. The maximum penalty for a gross misdemeanor is a fine of $1,000 and imprisonment for up to one year. Minn.Stat. § 609.03(2) (1982). Defendant Willis' prior conviction under § 169.121 occurred before April 1, 1982. The crime with which he is charged allegedly occurred on April 23, 1982.

The use of prior convictions to increase punishment for an underlying substantive offense committed after the effective date of a statute providing for increased penalties does not violate the *ex post facto* provisions of either the state or federal constitutions. The 1982 amendment did not increase the penalty imposed on offenses predating the effective date of the statute. Rather, it increased the possible penalty for the latest crime, which is considered a gross misdemeanor because of the prior offense. Merely allowing a conviction obtained before the amendment to be used in the assessment of the penalty for a subsequent offense does not violate the constitution. Numerous courts have so held. *See, e.g., State v. Levey,* 445 A.2d 1089, 1090–91 (N.H.1982); *State v. Freitas,* 61 Haw. 262, 602 P.2d 914, 924 (Haw.1979); *State v. Maldonado,* 578 P.2d 296, 299–300 (Mont.1978).

Affirmed.

PETERSON Justice, (concurring specially).

I concur in the result the court reaches on all three of the certified questions but state separately my views on the first question: whether Minn.Stat. § 169.121, subd. 2(b) (1982), which permits the introduction of evidence of the absence of tests in prosecutions for driving while under the influence, is a violation of a defendant's constitutional privilege against self-incrimination.

The United States Supreme Court has now answered the same question in *South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), in the negative.

It is now time for us to overrule *State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), *cert. denied,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974), which—but for the narrow distinction involved in this case—would continue to be a contrary answer in the affirmative.

There is no substantive difference in the state statutes considered in *Neville* and *Andrews.* The South Dakota statute considered in *Neville* specifically provided that refusal to submit to a blood alcohol test "may be admissible into evidence at the trial" on a charge for driving under the influence of alcohol. S.D.Comp.Laws Ann. § 32–23–10.1. Minn.Stat. § 169.121, subd. 2 (1969), as it was framed at the time of the *Andrews* decision, did not contain that explicit provision but just as explicitly had been amended to delete a prior proviso that "the refusal to permit the taking of specimens for such chemical analysis shall not be admissible in evidence." Act of June 7, 1971, ch. 893, § 2, 1971 Minn.Laws 1811, 1812–13.

The central issue in *Andrews* was whether *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), should change an earlier decision in *State v. McCarthy,* 259 Minn. 24, 104 N.W.2d 673 (1960), that such evidence violates a defendant's right not to be compelled in any criminal case to be a witness against himself. The majority said that it did not. Two dissenting justices (Peterson and Otis) said that it should; Chief Justice Knutson, concurring specially, said that in *McCarthy* and *Andrews* it was a mistake to base decision on constitutional grounds (rather than on construction of statutes in effect at the times of those decisions).

The South Dakota Supreme Court, in declaring its own statute unconstitutional, relied on *Andrews* and *Dudley v. State,* 548 S.W.2d 706 (Tex.Cr.App.1977), expressing the minority view [1] that the refusal to sub-

---

1. As the United States Supreme Court noted:

   Most courts applying general Fifth Amendment principles to the refusal to take a blood test have found no violation of the privilege

   against self-incrimination. Many courts, following the lead of Justice Traynor's opinion for the California Supreme Court in *People v. Suddah,* [*Sudduth*] 65 Cal.2d 543 [55 Cal.

mit to a requested blood test is "a tacit or overt expression and communication of defendant's thoughts," *State v. Neville*, 312 N.W.2d 723 at 726. Whatever doubt may have existed at the time of *Andrews* with respect to the full reach of *Schmerber* was set at rest with this opening paragraph of *Neville*:

> *Schmerber v. California*, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] (1966), held that a State could force a defendant to submit to a blood-alcohol test without violating the defendant's Fifth Amendment right against self-incrimination. We now address a question left open in *Schmerber, id.*, at 765, n. 9 [86 S.Ct., at 1833, n. 9], and hold that the admission into evidence of a defendant's refusal to submit to such a test likewise does not offend the right against self-incrimination.

—— U.S. at ——, 103 S.Ct. at 918.

The context in which the United States Supreme Court considered this important question is expressed in these unchallenged words of Justice O'Connor, writing for the court:

> The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy. See *Breithaupt v. Abram*, 352 U.S. 432, 439 [77 S.Ct. 408, 412, 1 L.Ed.2d 448] (1957) ("The increasing slaughter on our highways, most of which should be avoid-

able, now reaches the astounding figures only heard of on the battlefield"); *Tate v. Short*, 401 U.S. 395, 401 [91 S.Ct. 668, 672, 28 L.Ed.2d 130] (1971) (BLACKMUN, J., concurring) (deploring "traffic irresponsibility and the frightful carnage it spews upon our highways"); *Perez v. Campbell*, 402 U.S. 637, 657 and 672 [91 S.Ct. 1704, 1715 and 1722, 29 L.Ed.2d 233] (1971) (BLACKMUN, J., concurring) ("The slaughter on the highways of this Nation exceeds the death toll of all our wars"); *Mackey v. Montrym*, 443 U.S. 1, 17–18 [99 S.Ct. 2612, 2620, 61 L.Ed.2d 321] (1979) (recognizing the "compelling interest in highway safety").[2]

—— U.S. at ——, 103 S.Ct. at 920.

The statute considered in today's case is distinguished from those in *Neville* and *Andrews* by its limited provision that the absence of chemical tests may be cryptically disclosed with the express direction that the jury is not to draw any adverse inference therefrom. The broad principle announced in *Neville* would, of course, affirm the constitutionality of this statute without reliance on the textual differences in the statutes. Our legislature would be then more certain of its power more effectively to provide for enforcement of laws necessary to control "the carnage caused by drunk drivers."

AMDAHL, Chief Justice, concurring specially.

I join Justice Peterson's concurrence.

SIMONETT, Justice, concurring specially.

I join Justice Peterson's concurrence.

—— U.S. at ——, 103 S.Ct. at 921.

---

Rptr. 393], 421 P.2d 401 (1966), cert. denied, 389 U.S. 850 [88 S.Ct. 43, 19 L.Ed.2d 119] (1967), have reasoned that refusal to submit is a physical act rather than a communication and for this reason is not protected by the privilege. As Justice Traynor explained more fully in the companion case of *People v. Ellis*, 65 Cal.2d 529 [55 Cal.Rptr. 385], 421 P.2d 393 (1966) (refusal to display voice not testimonial), evidence of refusal to take a potentially incriminating test is similar to other circumstantial evidence of consciousness of guilt, such as escape from custody and suppression of evidence.

2. Justice Stevens, joined by Justice Marshall, although dissenting for the reason that the judgment of the South Dakota Supreme Court was sustainable on a non-federal ground—on grounds not involving the merits—stated: "The Court is understandably anxious to do its part in curtailing the 'carnage caused by drunk drivers.' * * * I sympathize with that concern, but it does not justify the rendition of an advisory opinion on a constitutional issue."