Mark Allan BORTNEM, petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C4–99–1598.

Court of Appeals of Minnesota.

May 23, 2000.

Jeffrey Stephen Sheridan, Inver Grove Heights, for appellant.

Mike Hatch, Attorney General, Peter Reed Marker, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by
AMUNDSON, Presiding Judge,
RANDALL, Judge, and DORIS OHLSEN
HUSPENI, Judge.*

## OPINION

### DORIS OHLSEN HUSPENI, Judge.*

Appellant Mark Allan Bortnem challenges the district court's order concluding that: (1) Bortnem's blood was drawn by a qualified person pursuant to Minn.Stat. § 169.123, subd. 3 (1998), and (2) Minn. Stat. § 634.15 (1998), which provides that certain certificates of analysis and blood sample reports shall be admissible at an implied consent hearing, is constitutional. Because the officer who drew Bortnem's blood was not one of the qualified individuals listed under Minn.Stat. § 169.123, subd. 3, we reverse; we do not address the issue of constitutionality of the statute.

## FACTS

Officer Mike Vandervort of the Cottage Grove Police Department stopped appellant's vehicle and eventually arrested appellant for driving while intoxicated. At the police station, appellant agreed to submit to a blood alcohol concentration test. Officer Vandervort obtained a Bureau of Criminal Apprehensions (BCA) blood-testing kit, withdrew appellant's blood, and sent it to the BCA for analysis. The blood-testing kit was sealed and intact.

Officer Vandervort is an emergency medical technician paramedic. He is nationally registered, has an intensive care medic's degree, and is certified by the State of Minnesota EMS Regulatory Board. He testified that he received several hundred hours of training in order to obtain state certification, including 100–200 draws of blood, approximately 50 for the purpose of determining alcohol concentration.

The blood sample was analyzed by a BCA forensic scientist, revealing that appellant had an alcohol concentration of .14. Subsequently, the Commissioner of Public Safety revoked appellant's driver's license.

At the implied consent hearing, appellant challenged Officer Vandervort's qualifications to withdraw blood under Minn. Stat. § 169.123, subd. 3 (1998), and also challenged the constitutionality of Minn. Stat. § 634.15 (1998) on the ground that it violates the separation of powers doctrine. In sustaining the commissioner's revocation of appellant's driving privileges, the district court concluded:

> Officer Vandervort, as a certified paramedic with experience in drawing blood, qualifies as an individual permitted to draw blood [under] Minn.Stat. § 169.123, subd. 3.

The district court further concluded that Minn.Stat. § 634.15 did not violate the separation of powers doctrine.

## ISSUES

1. Was Officer Vandervort qualified under Minn.Stat. § 169.123, subd. 3 (1998), to withdraw appellant's blood for purposes of determining his alcohol concentration?

2. Does Minn.Stat. § 634.15 (1998) violate the separation of powers doctrine?

Minn. Const. art. VI, § 10.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## ANALYSIS

### I.

 As the proponent of the alcohol concentration test, the state has the initial burden to "establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977). A reviewing court is not bound by and need not give deference to a district court's determination of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

Minn.Stat. § 169.123, subd. 3(a) (1998), provides:

> Only a physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist or laboratory assistant acting at the request of a peace officer may withdraw blood for the purpose of determining the presence of alcohol, controlled substances, or hazardous substances.

Bortnem argues that because Officer Vandervort was not "a physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist, or laboratory assistant acting at the request of a peace officer," he was not qualified to withdraw Bortnem's blood for the purposes of determining blood alcohol level under Minn.Stat. § 169.123, subd. 3 (1998). Respondent Commissioner of Public Safety, in alleging that Vandervort was qualified under the statute and that the list set forth in subdivision 3(a) is not exclusive, cites *Olson v. Commissioner of Pub. Safety*, 513 N.W.2d 491 (Minn.App. 1994).

In *Olson*, a phlebotomist drew the blood. This court observed in dicta:

> Minnesota case law has consistently recognized the remedial nature of DWI statutes. Accordingly, these laws are liberally interpreted in favor of the public interest and against the private interests of the drivers involved.

> A liberal construction of the statute does not exclude a phlebotomist with seven and one-half years of experience, whose only duty was to draw blood, and who works in a hospital setting under the supervision of a medical technologist. Rather, these facts comply with the legislative intent to ensure the competency of the person withdrawing the blood and to protect the defendant's health.

*Id.* at 493 (citation and quotation omitted).

The state urges that the liberal construction of the statute applied by the *Olson* court should guide our decision in this case. We conclude, however, that the state's reliance on *Olson* is misplaced. The actual decision in *Olson* provided that

> [b]ecause Schill testified, without objection, that she was hired as a "lab assistant with phlebotomy being [her] duty," we conclude that Schill was qualified under the statute.

*Id.* (second alteration in original). Rather than holding that the categories listed in the statute were not exclusive, the *Olson* court was able to bring the phlebotomist within the definition of "laboratory assistant," a category specifically listed in the statute. Further, we note the word "only" in subdivision 3(a), immediately prior to the list of those qualified to draw blood. We find it difficult to comprehend why the legislature would preface such a list with "only" if the list was intended to be non-exclusive.

 We must determine whether in this case, as in *Olson*, the individual who drew blood can be brought within one of the categories listed in the statute. We conclude that Officer Vandervort cannot.[1] Indeed, he is a paramedic, and appears to

---

**1.** At the implied consent hearing, Officer Vandervort admitted he was not a "medical technician," and no attempt was made to qualify him under that title. He also testified at the implied consent hearing that he was not a "physician's trained mobile intensive care paramedic."

be a well-trained and an experienced one. But qualifying him under the statutory definition of "paramedic" would compel us to read out of the statute the words "physician's," "trained," "mobile," "intensive," and "care." That we cannot do. We must assume that these qualifying adjectives were included in the statute for a reason and that the legislature must have intended that these words add something meaningful to the statute. *See* Minn.Stat. § 645.17(2) (1998) (listing presumptions to guide courts in ascertaining legislative intent). "When interpreting a statute, our role is to give effect to the intent of the legislature." *Correll v. Distinctive Dental Services*, 607 N.W.2d 440, 445 (Minn.2000) (citations omitted). "If the statutory language is clear, we rely on its plain meaning." *Id.* (citations omitted).

Finally, we look to Minn.Stat. § 645.17 (1998) for guidance in construing Minn. Stat. § 169.123, subd. 3. Unfortunately, that guidance is less than certain. Section 645.17(2) provides that "[t]he legislature intends the entire statute to be effective and certain." That language supports our conclusion that each word of the statute must be given meaning. But Minn.Stat. § 645.17(1) cautions that "[t]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable." By complying with section 645.17(2), do we create the result forbidden by section 645.17(1)? The state argues that we do.

The state claims that because the intent of the legislature is to make certain that those withdrawing blood are competent, it would be absurd to exclude an otherwise qualified paramedic from doing so. While the position of the state is a reasonable one, we conclude that this argument is one more appropriately made to the legislature than to the courts.[2]

■ Ultimately, the language of Minn. Stat. § 645.16 (1998) convinces us that we cannot adopt the state's position on absurdity.

> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

*Id.* The implied consent statute clearly states that "*[o]nly* a physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist or laboratory assistant" is qualified to withdraw blood for purposes of determining a blood alcohol concentration level. Minn.Stat. § 169.123, subd. 3(a) (emphasis added). While the *Olson* court was able to qualify the phlebotomist as a "laboratory assistant," we are unable to qualify Officer Vandervort as a paramedic under the statute. Therefore, appellant's blood sample was impermissibly obtained, and the revocation of appellant's driver's license must be rescinded.

## II

■ Appellant challenges the constitutionality of Minn.Stat. § 634.15 (1998), alleging that it violates the separation of powers doctrine. We are mindful that "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). In view of our decision that revocation of appellant's driver's license must be rescinded, we need not reach the issue of the constitutionality of the challenged statute.

## DECISION

Because Minn.Stat. § 169.123, subd. 3 (1998), provides an exclusive list of people qualified to withdraw blood for the purpose of determining blood alcohol level, and while adequately qualified to withdraw

---

2. In 1973 and 1980, the legislature took the opportunity to amend the provision of Minn. Stat. § 169.123, subd. 3, which identifies those qualified to withdraw blood under the statute. 1973 Minn. Laws ch. 555, § 1; 1980 Minn. Laws ch. 395, § 1.

blood, Officer Vandervort was not one of the listed people, we reverse.

**Reversed.**