STATE of Minnesota, Respondent,

v.

Steven James PEARSON, Petitioner,
Appellant,

and

Steven James Pearson, Petitioner,
Appellant,

v.

Commissioner of Public
Safety, Respondent.

Nos. CX–01–361, C3–01–363.

Court of Appeals of Minnesota.

Sept. 11, 2001.

Mike Hatch, Attorney General, Jeffrey F. Lebowski, Assistant Attorney General, St. Paul, MN; and Roger L. Swenson, Bellingham City Attorney, Sarah E. Winge, Assistant City Attorney, Montevideo, MN, (for respondent State of Minnesota).

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, MN, (for appellant).

Mike Hatch, Attorney General, Matthew G. Frank, Assistant Attorney General, St. Paul, MN, (for respondent Commissioner of Public Safety).

Considered and decided by TOUSSAINT, Chief Judge, SCHUMACHER, Judge, and PARKER, Judge.*

## OPINION

SCHUMACHER, Judge

The trial court sustained the revocation of appellant Steven James Pearson's driver's license in an implied consent hearing, and Pearson was convicted and sentenced for driving with an alcohol concentration over .10 in a criminal trial based on stipulated facts. Pearson appealed both the implied consent and criminal cases and the appeals were consolidated. We affirm.

## FACTS

On August 20, 2000, a Lac Qui Parle County sheriff's deputy stopped and arrested Pearson for driving under the influence. The deputy read Pearson the implied consent advisory, and Pearson agreed to a blood test. The deputy escorted Pearson to Madison Hospital for the blood test and provided a Bureau of Criminal Apprehension (BCA) blood kit to the medical laboratory assistant on duty, who administered the blood test.

The medical laboratory assistant had more than 19 years of experience and was certified by the Minnesota Society of Clinical Pathology in 1973. She testified at the implied consent hearing that a laboratory assistant and a medical laboratory assistant are the same. She knew of no separate degree or certification required for a laboratory assistant as compared to a medical laboratory assistant and did not know any laboratory assistants who were not medical laboratory assistants.

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

The blood sample was sent to the BCA, where a lab analyst determined that Pearson's blood-alcohol concentration was .16.

### ISSUES

1. Is a medical laboratory assistant a person qualified to draw blood under the implied consent law?

2. Does Minn.Stat. § 634.15 (1998), governing the admission of blood samples into evidence, violate the separation of powers doctrine of the Minnesota Constitution?

### ANALYSIS

■ 1. Pearson contends that the trial court erred as a matter of law by finding that a medical laboratory assistant was qualified to draw blood under Minn.Stat. § 169.123, subd. 3 (1998).[1] The statutes provides that:

Only a physician, medical technician, physician's trained mobile intensive care paramedic, registered nurse, medical technologist or *laboratory assistant* acting at the request of a peace officer may withdraw blood for the purpose of determining the presence of alcohol, controlled substances, or hazardous substances.

Minn.Stat. § 169.123, subd. 3(a) (emphasis added). Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn. 1998).

Pearson argues that the list of persons considered competent to withdraw blood samples is exclusive, and because "medical laboratory assistant" is not on the list, the blood test should not be admissible. The district court disagreed, finding that the

duties of a medical laboratory assistant and laboratory assistant were the same:

[The medical laboratory assistant] testified that there are no differences between her duties as a medical laboratory assistant and the duties of a laboratory assistant. Adding the word "medical" in front of [her] laboratory assistant title merely clarifies that her laboratory specialty is in the medical field, rather than another field such as soil science, water science, etc.

■ When interpreting statutes, the appellate court's role is to give effect to the intent of the legislature. *Correll v. Distinctive Dental Servs.*, 607 N.W.2d 440, 445 (Minn.2000). If the statutory language is clear, we rely on its plain meaning, but if the statute is ambiguous, we rely on the rules of statutory construction. *Id.*

We interpreted this provision of the implied consent statute in *Olson v. Comm'r of Pub. Safety*, 513 N.W.2d 491 (Minn.App. 1994), and *Bortnem v. Comm'r of Pub. Safety*, 610 N.W.2d 703 (Minn.App.2000), *review denied* (Minn. July 25, 2000). In *Olson*, the driver's blood was drawn by a phlebotomist. *See The American Heritage Dictionary of the English Language* 1361 (3d ed.1992) (defining phlebotomist as "one who draws blood for analysis or transfusion"). The phlebotomist testified that she was a "lab assistant with phlebotomy being [her] duty." *Olson*, 513 N.W.2d at 493. The court concluded that a liberal construction of the statute does not exclude a phlebotomist whose only duty was to draw blood, noting that the DWI laws are to be interpreted liberally in favor of the public interest and against the

---

1. Minn. Stat § 169.123 was repealed in 2000, effective January 1, 2001. The new statute is found at Minn. Stat § 169A.51, subd. 7. Be- cause Pearson's arrest occurred on August 20, 2000, the 1998 statute applies.

private interests of the drivers involved. *Id.*

In *Bortnem,* this court found that a paramedic was not within the categories listed in the statute. 610 N.W.2d at 704. There, the blood was drawn by an emergency medical technician paramedic and not a "physician's trained mobile intensive care paramedic" as required by the statute. *Id.* at 704–05. The court distinguished *Olson* because *Olson* did not add "phlebotomist" to the statutory list, but rather found that a phlebotomist fit within the category of "laboratory assistant." *Id.* at 705.

■ The facts here are more closely analogous to *Olson.* While the term "medical laboratory assistant" is not included in the statute, a medical laboratory assistant can be considered a specialized type of laboratory assistant. The medical laboratory assistant here testified that there is no difference in the training required for a laboratory assistant and a medical laboratory assistant. The national certification for a laboratory assistant requires the same training as the Minnesota certification for a medical laboratory assistant and only requires the payment of an additional fee. Interpretation of the statute readily allows inclusion of a "medical laboratory assistant" within the category of "laboratory assistant." The district court did not err in finding that a medical laboratory assistant was a person qualified to draw blood under Minn.Stat. § 169.123, subd. 3.

2. Pearson also contends that Minn. Stat. § 634.15 (1998), violates the separation of powers doctrine of the Minnesota Constitution by limiting existing court-promulgated procedures. Pearson argues that the legislature had no authority to enact a law limiting an individual's ability to attack the admissibility of a blood test under the Rules of Evidence.

■ "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993) (citation omitted). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989) (citation omitted). The party challenging the constitutionality of a statute must show beyond a reasonable doubt that the Minnesota Constitution has been violated. *Id.*

■ The statute at issue allows a report of the blood analysis results to be admitted in evidence in an implied consent hearing if certain conditions are met. Minn.Stat. § 634.15. The report must be prepared by the person who administered the test; the person who drew the blood sample must be competent to administer the test under Minn.Stat. § 169.123, subd. 3; and the report must be prepared consistent with the rules promulgated by the commissioner of public safety. Minn.Stat. § 634.15, subd. 1(b)(i)-(iii). If the report is signed by the person who drew the blood sample, it is admissible as evidence without proof of the seal, signature, or official character of the person who signed it. Minn.Stat. § 634.15, subd. 1(b). The defendant may subpoena the person who administered the blood test to testify, but the testimony is not necessary for the admissibility of the report. Minn.Stat. § 634.15, subds. 1–2.

■ The supreme court has inherent authority to create rules of procedure. *See State v. Willis,* 332 N.W.2d 180, 184 (Minn.1983). Pearson contends that Minn. Stat. § 634.15 purports to limit the admissibility of evidence, and that the rules of evidence prevail in a conflict between a procedural rule and a statute. *See State v.*

*Johnson,* 514 N.W.2d 551, 553–54 (Minn. 1994) (stating that legislature has no constitutional authority to reserve a right to modify or enact statutes that will govern over court rules of procedure already in place) (citing Maynard E. Pirsig & Randall M. Tietjen, *Court Procedure and the Separation of Powers in Minnesota,* 15 Wm. Mitchell L.Rev. 141, 182 (1989)).

 The legislature may enact laws that shift the burden of proof by allowing certain things to constitute prima facie evidence or create a rebuttable presumption. *Juster Bros. v. Christgau,* 214 Minn. 108, 118, 7 N.W.2d 501, 507 (1943); *Willis,* 332 N.W.2d at 184. Evidentiary presumptions created by the legislature have been held to be constitutional. *Lott v. Davidson,* 261 Minn. 130, 141–42, 109 N.W.2d 336, 344 (1961). The statute requires the use of a BCA blood-testing kit, which establishes a prima facie case for admissibility of the blood test result. *State v. Dille,* 258 N.W.2d 565, 568 (Minn.1977). Minn. Stat. § 634.15 is consistent with the rules of evidence. The use of a BCA kit and BCA analysis methods is sufficient to establish the test's reliability. *Genung v. Comm'r of Pub. Safety,* 589 N.W.2d 311, 312–13 (Minn.App.1999), *review denied* (Minn. May 18, 1999).

A defendant in a criminal case may challenge the accuracy or reliability of the test by subpoenaing the laboratory assistant or BCA analyst to testify under Minn.Stat. § 634.15, subd. 2, allowing the court the opportunity to determine if the admission of the evidence was unfairly prejudicial. A blood sample report has been held to be admissible without establishing the foundation that the blood test administrator was qualified. *Glick v. Comm'r of Pub. Safety,* 362 N.W.2d 15, 16 (Minn.App.1985) (reasoning that intent of Minn.Stat. § 634.15 is to allow report into evidence routinely, "preventing unnecessary and costly court

appearances or document production."). The authenticity of the report need not be verified because it is "inferred from the place and nature of taking the sample." *Id.*

In facts analogous to this case, the defendant in *Willis* claimed that Minn.Stat. § 169.121, subd. 2(b) (1982), violated the separation of powers clause by restricting the power of the courts to determine the relevancy and admissibility of evidence of the absence of blood, breath and alcohol tests in DWI prosecutions. 332 N.W.2d at 184. The court noted that the judiciary has the inherent power to establish rules of evidence, but cautioned:

> Due respect for the coequal branches of government requires the court to exercise great restraint before striking down a statute as unconstitutional, particularly when it involves a determination of what is a legislative and what is a judicial function.

*Id.* The court found no separation of powers violation and enforced the statute at issue because it did not interfere with or impair the "judiciary's function of ascertaining facts and applying the law to the facts established." *Id.*

 Similarly, Minn.Stat. § 634.15 does not interfere with or impair the judicial functions of ascertaining the facts and applying the law. The defendant in a criminal case who questions the validity of a test may subpoena the laboratory analyst or the person who prepared the blood sample report to testify. Minn.Stat. § 634.15, subd. 2(a)-(b). The court would be permitted to hear the testimony of such witnesses and ascertain the facts if the validity of the report or analysis was questioned. If the defendant requests the presence of the witness and the state fails to produce the witness, the test result is inadmissible. *Weise v. Comm'r of Pub. Safety,* 370 N.W.2d 676, 678 (Minn.App.

1985) (decided under 1984 version of statute which also applied to implied consent cases). The statute does not significantly impair the judicial function, but merely establishes a presumption of reliability that the driver may choose to rebut with live testimony.

## DECISION

A medical laboratory assistant is a person qualified to draw blood under the implied consent law. Pearson has not proved beyond a reasonable doubt that Minn.Stat. § 634.15 (1998), governing the admission of blood samples into evidence, violates the separation of powers doctrine. The legislature may enact laws that shift the burden of proof by creating evidentiary presumptions and the statute does not interfere with the judicial functions of ascertaining facts and applying the law.

**Affirmed.**